175 So. 753

**DAVIDSON v. AMERICAN PAPER MFG. CO., Inc., et al.**

No. 34377.

June 21, 1937.

Rehearing Denied July 8, 1937.

Claude L. Johnson and Severn T. Darden, both of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee.

ODOM, Justice.

This is a mandamus proceeding brought by Mrs. Evelyn M. Davidson (Whitehurst), individually and in her capacity as administratrix of the succession of Clarence E. Davidson, against the American Paper Manufacturing Company, Inc., and against Percy R. Davidson, secretary, Norman L. Davidson, president, and Mrs. C. L. Johnson, each being a stockholder in the said corporation, and against C. L. Johnson, who holds a voting trust agreement signed by certain persons who at one time owned shares of stock in the corporation but who later sold it to Clarence E. Davidson, to compel the calling and holding of a meeting of the stockholders of the said corporation for the purpose of electing a board of directors; to compel the said officers and stockholders to recognize her right to vote at such meeting the shares of the capital stock owned by her individually and to vote in her capacity as administratrix the shares of stock which belong to the succession of Clarence E. Davidson; and to have declared illegal and of no effect the election of the present board of directors, which election took place on October 16, 1933, in which meeting of the stockholders she was not permitted to participate.

Plaintiff alleged that she individually and the succession of Clarence E. Davidson, of which she is administratrix, owned a majority of all the outstanding stock of the corporation; that the minority stockholders had illegally taken possession of the corporation, its books, papers, and effects; had elected a board of directors and officers at a meeting in which she was not permitted to vote or participate either in her individual capacity as a stockholder or in her capacity as administratrix. She brought the suit under the provisions of Act No. 250 of 1928 (page 409), which is an act, according to its title, to provide for the "Incorporation, Regulation, Merger, Consolidation and Dissolution of Certain Corporations for Profit." She alleged that she had requested the secretary, the president, and the other stockholders, who are conducting the affairs of the corporation, to call a special meeting of the stockholders, and that they had refused to do so.

The American Paper Manufacturing Company, Inc., is a Louisiana corporation having its domicile and place of business in New Orleans.

Defendants filed exceptions of no cause or right of action, misjoinder of parties, improper cumulation of causes of action, and an exception to the jurisdiction of the court, ratione materiæ. All these exceptions were overruled by the court, and defendants answered.

They admit in answer that according to the corporation's stock book and other records of the corporation, plaintiff owns individually stock certificate No. 15 for 10 shares of the capital stock, and that the same records show that at the time of his death on September 30, 1933, Clarence E. Davidson, whose succession is being administered by plaintiff, owned stock certifi

cate No. 24 for 35 shares, certificate No. 23 for 5 shares, certificate No. 22 for 15 shares, certificate No. 21 for 5 shares, No. 17 for 50 shares, No. 14 for 15 shares, No. 16 for 30 shares, No. 27 for 15 shares, No. 26 for 35 shares, and No. 25 for 35 shares, or in all 240 shares of stock. Plaintiff claims that Clarence E. Davidson owned also certificate No. 20 for 5 shares, issued to George J. Gueno, Jr., which certificate was indorsed by him in blank, attached to which is a draft drawn to the order of the said Gueno on Clarence E. Davidson in part payment for the said 5 shares. So that, as shown by the records of the corporation and according to the admissions, plaintiff owned at the time this suit was filed 10 shares of the stock, and the succession owned 240 shares. If it be true that C. E. Davidson owned the 5 shares issued to Gueno, then plaintiff and the succession owned 255 shares, or all the 300 issued and outstanding shares of the stock of the corporation except 45 shares, these being owned by defendants as follows: Certificate No. 8 for 15 shares owned by Percy R. Davidson; certificate No. 11 for 15 shares owned by Norman L. Davidson; and certificate No. 10 for 15 shares owned by Mrs. C. L. Johnson.

But defendants in their answer say, in sum, that even though the books and records of the corporation do show ownership of the stock as alleged by plaintiff, and even though the certificates were issued in the names of plaintiff for 10 shares and of C. E. Davidson for 240 shares, the stock was not, as a matter of fact, owned by them for these reasons:

1. That certificate No. 15 for 10 shares in the name of plaintiff individually and certificate No. 16 for 30 shares in the name of Clarence E. Davidson, deceased, were issued under false representations of C. E. Davidson that he was due credits in that amount from the corporation.

2. That certificate No. 17 for 50 shares of the capital stock issued to Clarence E. Davidson was issued under false representations made to the board of directors by the said Clarence E. Davidson, and that no legal consideration was given for said stock.

3. That certain shares of the stock purchased by Clarence E. Davidson from Mrs. A. F. Davidson, Mrs. Mignonne Davidson Brown, Bernice G. Terrell, Mrs. T. I. St. Martin, Sarah Gueno, and George Gueno were illegally purchased by the said Clarence E. Davidson with funds of the corporation which he misappropriated to his own account; it being alleged in the answer that these shares of stock should be returned and surrendered to the corporation.

4. That the purchase of 105 shares of the capital stock of said corporation from Mrs. A. F. Davidson by C. E. Davidson was made with knowledge of the existence of a voting trust agreement in favor of Claude L. Johnson signed by the said Mrs. A. F. Davidson.

5. That certificate No. 15 for 10 shares of stock issued to Mrs. Evelyn M. Davidson was issued without authority of the board of directors and without legal or valid consideration, and is therefore void.

6. That certificate No. 14 for 15 shares of the stock issued in the name of Clarence E. Davidson is rightfully the property of Percy R. Davidson, Norman L. Davidson, and Mrs. Claude Johnson, and the children of a deceased sister, for the reason that Clarence E. Davidson was indebted to the estate of his father and that said shares of stock were subject to collation.

The trial of the case on its merits extended over a long period of time and the record is voluminous. There was judgment for plaintiff as prayed for, commanding the secretary of the corporation and the minority stockholders who claimed to have been elected as directors to call a special meeting of the stockholders to be held on a date fixed by the court, for the purpose of electing a board of directors; recognizing plaintiff to be the owner individually of the 10 shares of stock standing in her name and recognizing the succession of Clarence E. Davidson as the owner of 245 shares of the capital stock of the corporation, including certificate No. 20 for 5 shares issued originally to George J. Gueno, Jr.; and decreeing that plaintiff as administratrix was entitled to vote the shares of stock owned by the succession.

It was further ordered that defendants, who are now in possession of the corporate property, books, and records, etc., and who are conducting the affairs of the corporation, permit the plaintiff in her individual and representative capacities to vote the said stock at a stockholders' meeting; and it was decreed that all proceedings, actions, and deliberations had at a special meeting of the stockholders of the corporation on October 16, 1933, were illegal and null, and the election of a board of directors at said meeting was set aside. Defendants appealed.

## On Exception of No Cause of Action.

The basis of this exception is twofold. First, it is pointed out by counsel that plaintiff in her individual capacity claims to own only 10 of the 300 outstanding shares of the capital stock of the corporation, which is less than one-fifth; and that if it be conceded that she owns that stock, it is not the ministerial duty of the secretary to call a special meeting of the stockholders at her request, because paragraph 2, § 30, Act No. 250 of 1928, provides that it is the ministerial duty of the Secretary to call a special meeting when requested by "any shareholder or shareholders holding in the aggregate one-fifth of the voting power of all shareholders."

The second ground is that if it be conceded that the succession of Clarence E. Davidson owns 245 shares of the stock, a majority of it, plaintiff as administratrix has no right to vote that stock at a stockholders' meeting.

This contention of counsel is based upon the proposition that an administrator does not own the property of the succession which he administers and that the administratrix in this case, not being the owner of the stock, cannot vote it because section 32, par. 1, of the above cited act provides that "each shareholder of record shall have the right at every shareholders' meeting to one vote for each share standing in his name on the books of the corporation." Article 4 of the charter of this corporation contains a similar provision.

It is true, as counsel say, that an administrator does not own the property of the succession which he administers. State v. Brown, 32 La.Ann. 1020; Tulane University v. Board of Assessors, 115 La. 1025, 40 So. 445.

But from the fact that it is provided both in the act of the Legislature and in the charter of this corporation that shareholders shall be entitled to vote the stock standing in their names, and the further fact that administrators do not own, in a strict legal sense, the property of the succession, it does not necessarily follow that they cannot vote the shares of stock owned by the succession at a stockholders' meeting.

Administrators of successions have only administrative powers. But where a succession owns capital stock of a corporation, the voting of such capital stock by the administrator at a stockholders' meeting is an administrative act which the administrator not only may, but must, perform. An administrator has the same powers and has imposed upon him the same duties as are granted and imposed upon curators of vacant estates. Civ.Code, art. 1049. And article 1147 of the Civil Code says that: "Every curator of a vacant succession or of absent heirs is bound to take care of the effects intrusted to him as a prudent administrator, and to render an exact and faithful account of the fruits and revenue they produce. He is responsible for all damages caused by his misconduct."

It is not suggested by counsel that any person other than the administrator would have a right to or could vote the stock of the corporation owned by the succession

at a stockholders' meeting of the corporation. Their contention seems to be that no one can exercise that authority. If that were true, the succession as a stockholder would be without representation in the business and affairs of the corporation during the entire period of the administration, which is frequently long drawn out; and if the succession happened to own a majority of the stock, as in the present case, the corporation, if it could function at all, would necessarily go into the hands of and be controlled by a minority of the stockholders. This could and might result in loss and damage to the succession, which the administrator is "bound" to prevent if he can. Every stockholder of a corporation is given a voice in the conduct of its affairs. If the administrator cannot vote the stock owned by the succession, the succession has no voice and, as in this case, where the succession owns a majority of the stock, the corporation would necessarily have to function, if it functioned at all, through a minority of the stockholders, and that cannot be done under the law.

Section 31, par. 1, Act No. 250 of 1928, provides that: "A shareholders' meeting duly called can be organized for the transaction of business *whenever a quorum is present*," (italics ours), which means, of course, that it cannot be organized for the transaction of business without a quorum. And paragraph 2 of the same section provides that: "Except as otherwise provided in the articles or by-laws of this Act: (a) the presence, in person or by proxy, of the holders of a majority of the voting power shall constitute a quorum."

" 'Voting Power' means the right vested, by law or by the articles or the by-laws of the corporation, in the shareholders, or in one or more classes of shareholders, to vote in the determination of any particular question or matter coming before meetings of the shareholders." Paragraph 16, § 1 of the act.

The charter of this corporation says nothing about what shall constitute a "quorum" of the shareholders, and the by-laws are not in evidence. Therefore, the act itself controls, and it follows that if the administratrix cannot vote the stock owned by the succession, no business can be transacted at a shareholders' meeting for lack of a quorum.

It is further provided in section 31 of the act, paragraph 2 (b), that the shareholders present "at a duly organized meeting" may continue to do business until adjournment even though a quorum is broken by the withdrawal of stockholders. But that is in a case where a stockholders' meeting is "duly organized," and one cannot be "duly organized" without a quorum, which is a majority of the stockholders. This section of the act further provides (c) that "if a meeting cannot be organized because a quorum has not attended, those present may adjourn the meeting," etc. This clearly means that a shareholders' meeting cannot be organized without a quorum. Therefore, under counsel's theory, if a succession owns a majority of the stock of the corporation, the corporation cannot function under the law because there could never be a quorum of stockholders to elect officers.

The question squarely presented by counsel for defendants is whether the administrator of a succession may vote the shares of stock standing in the name of and owned by the succession which he administers. So far as we know, this question has never been passed upon by this court; the reason probably being that no one has heretofore questioned the right of the administrator to do so. The question has, however, been decided by courts of other jurisdictions, and apparently they have uniformly held that an administrator or an executor of a succession may vote the stock owned by the succession at a stockholders' meeting.

Under the general heading, Corporations, 10 Cyc. p. 334, the following text appears:

"Executors and administrators have the right to vote with respect to stock standing on the corporate books in the name of the testator on exhibiting an exemplified copy of their letters testamentary or of administration; and this without any formal transfer of the shares on the books of the corporation to them."

A similar statement of the rule is found in 7 R.C.L. 346; 14 C.J. 903, § 1397; Fletcher's Cyclopaedia of the Law of Corporations, vol. 3, p. 2807, § 1667. See, also, the case of Billings v. Marshall Furnace Co., 210 Mich. 1, 177 N.W. 222, 9 A.L.R. 1239. Many other cases might be cited, but we think it unnecessary.

On this point counsel for the defendants cite two cases: Monsseaux v. Urquhart, 19 La.Ann. 482, and State ex rel. Martin v. New Orleans & Carrollton Railroad Co., 30 La.Ann. 308. Neither of these cases is in

point, because the question whether an executor or administrator may vote corporate stock owned by the succession was not passed upon.

We hold, therefore, that the ruling of the trial court that the administratrix was entitled to vote the stock of this corporation at shareholders' meetings was correct.

## On Exception of Misjoinder of Parties.

This exception was properly overruled. Under the act of the Legislature above referred to, it is provided in section 30, par. 2:

"At any time, upon written request of any director, or of any shareholder or shareholders holding in the aggregate one-fifth of the voting power of all shareholders, it shall be the ministerial duty of the Secretary to call a special meeting of shareholders to be held at the registered office at such time as the Secretary may fix."

■ It is argued by counsel for defendants that inasmuch as it is made the ministerial duty of the secretary to call a meeting and not the ministerial duty of the other officers or of the shareholders to do so, it was improper to join them in this proceeding. If the sole purpose of plaintiff's suit were to compel the holding of a stockholders' meeting there might perhaps be merit in counsel's argument, although the other defendants cannot be prejudiced by being made parties. But plaintiff coupled with her demand for a stockholders' meeting an action to have it decreed that she was entitled to vote in her capacity as administratrix the stock belonging to the succession, and also to have it decreed that certain pro-

ceedings had by the minority stockholders were null and void. It was, therefore, necessary for plaintiff to make the alleged de facto officers of the corporation parties to the suit.

■ We think there is no merit in the exception of improper cumulation of causes of action. If the minority stockholders have taken possession of the corporation and are conducting its affairs, plaintiff has the right not only to set aside the election of the board of directors and the election of officers by the board of directors, but has also the right to compel the holding of a stockholders' meeting composed of a quorum.

The exception to the jurisdiction of the court seems to have been abandoned, as it is not mentioned in counsel's brief.

## On the Merits.

The American Paper Manufacturing Company, Inc., was organized in 1919 with an authorized capital stock of 100 shares, par value $100 per share. In October, 1924, the capital stock was increased to $40,000, but only $30,000 of the stock, or 300 shares, have been issued. It is conceded that when C. E. Davidson died on September 30, 1933, he was the record owner of 240 shares of the stock and that his wife, Mrs. Evelyn M. Davidson, was the record owner of 10 shares. By "record owner" we mean that the stock certificates had been issued to them and in their names, as shown by the certificates themselves and by the corporation stock book.

The certificate representing 10 shares owned by Mrs. Davidson was issued to her

originally. Of the shares owned by C. E. Davidson, some of the certificates were issued to him originally. He subsequently purchased other shares of stock, and in each case except one, where only 5 shares are involved, those who sold their stock to him surrendered the shares properly endorsed to him, which certificates were presented to the president and secretary of the corporation, who canceled them on the books and reissued stock certificates for the same number of shares in the name of Clarence E. Davidson. The corporation stock book shows this. These stock certificates were delivered to him and were held by him at the time of his death.

▉ The one exception to this record ownership is certificate No. 20 for 5 shares, issued to Geo. J. Gueno, Jr., on July 1, 1930. The indorsement on this certificate signed by Gueno shows that he sold it on September 5, 1933, "for value received"; and while the name of the purchaser was left blank, it was evidently sold to C. E. Davidson because it was sent to him with draft attached drawn on him by Gueno in part payment of its value. Gueno is not claiming this stock, and we think the trial judge correctly found that Clarence E. Davidson was the owner of it.

▉ These stock certificates being registered on the books of the corporation in the names of Mrs. Davidson and of Clarence E. Davidson, the presumption is that they were regularly and legally issued for a valuable consideration and that they were owned by the persons designated therein. The certificates themselves are prima facie proof of these facts.

The general rule is stated as follows in 14 C.J., § 709, p. 481: ·

"Presumption of Validity and Ownership. A certificate of stock is prima facie evidence both of the validity of the issue of the stock, and of the ownership of the shares represented thereby by the person designated in the certificate or the subsequent holder thereof under a proper endorsement and transfer. And of course, where a stock certificate is issued to and receipted for by a person, the presumption is, in the absence of any contrary showing, that he is the owner of the stock. But, except for purposes of an estoppel as against bona fide purchasers, such certificates are no more than prima facie evidence either of the validity of the issue, or of the stockholder's title.".

In order to overthrow the prima facie case made out by plaintiff as to the ownership of these shares of stock by the introduction in evidence of the certificates and the books, and to rebut the presumption of regularity and ownership which necessarily arises therefrom, the three defendants who own 45 shares of the stock made an effort to prove that C. E. Davidson, who for more than ten years prior to his death had active charge and management of the affairs of the corporation, had procured the issuance to himself of certain shares of the stock through fraud and misrepresentation, and that the stock he purchased from other shareholders was paid for with funds belonging to the corporation. They charge that he practiced various and sundry deceitful and fraudulent schemes and devices to swindle the stockholders. These practices,

they say, began prior to 1924 and continued on down to the date of his death, a period of about ten years.

When these charges were made Clarence E. Davidson was dead. His lips were sealed, and the tomb can make no rejoinder. But there is testimony which absolves the deceased of these post mortem charges of deceit and dishonesty. We refer particularly to the minutes and records of the various meetings held by the board of directors of the corporation, which show that the board authorized the issuance of certain shares of stock to C. E. Davidson, authorized him to purchase certain other shares on the conditions and terms named, and at the meeting when this was authorized two of the three defendants and the husband of the other, who now make the charges, were present and participated; to certain correspondence between him and some of the defendants; to certain book entries made at times not suspicious showing that he had credits on the books sufficient in amount to pay for the stock he purchased.

Furthermore, these defendants have rested their case largely on the weakest kind of evidence, statements and declarations alleged to have been made by a person now dead. This court said long ago in the case of Bodenheimer v. Bodenheimer's Ex'rs, 35 La.Ann. 1005:

"Extrajudicial admissions of a dead man are the weakest of all evidence. They cannot be contradicted. No fear of detection in false swearing impends over the witness. In most instances such testimony is scarcely worthy of consideration."

This case was cited and the above paragraph quoted in Succession of Townsend, 40 La.Ann. 66, 3 So. 488.

Defendant's burden of complaint is that the deceased, Clarence E. Davidson, acquired the stock through fraudulent practices. But never until after his death did they make these charges. And yet, each one of them admits that he had personal knowledge of the issuance of the stock at the time issued and of the circumstances under which the transaction took place. Not only that, the records show, and defendants have been forced to admit, that they approved the proceedings.

What men do frequently speaks so loud that their voices can scarcely be heard. That is the case here. Defendants knew what was going on and remained silent. They now say that C. E. Davidson procured stock of the corporation through fraudulent and deceptive practices in October, 1924. And yet they waited nearly ten years to make complaint. While he was living they made no demand on him to rectify the wrongs which they now say he committed and about which they admit they knew.

They charge in their pleadings and testified as witnesses that Clarence E. Davidson had full and complete charge and control of the affairs of the corporation and that he concealed from them the true facts as to conditions; that he made no statements at directors' meetings; and that they were utterly ignorant of what the books showed. Yet they admitted on cross-examination that they had access to the books and could have inspected them or had them audited

if they had seen fit to do so. The record shows that at the meeting of the directors held in October, 1924, attended by two of the defendants and by the husband of the other, who is an attorney at law and represents them in this suit, an auditing committee of three, composed of shareholders who were then present, was appointed to audit the books. The committee took no action. One of the defendants testified that at that meeting Mrs. St. Martin, a shareholder, made some statement to the effect that she would like to have the books audited. So far as the record shows, no objection was urged by C. E. Davidson. One of the defendants testified that at a subsequent meeting some mention was made about what the books showed as to the condition of the corporation, and that C. E. Davidson then said that the books were on the table subject to their inspection.

Although defendants now charge and contend that Clarence E. Davidson was guilty of fraudulent practices toward them, yet he was retained by the board of directors, of which they were members, as general manager of the corporation from about 1922 to the date of his death in 1933, and his salary was increased at least four times. It was first fixed at $300 per month, then raised to $400, then to $500, and finally to $600 per month. Not only that, at various meetings of the board they voted him a bonus in addition to his salary.

Under such circumstances the defendants who now seek to set aside these transactions have assumed a heavy burden. The question is whether they have discharged that burden. The trial judge did not think so, nor do we.

The trial judge seems to have had some doubt as to whether the oral testimony offered by these defendants was admissible, although he admitted it subject to objections. It is extremely doubtful, we think, whether these defendants should be heard to speak now in support of their efforts to impeach their official acts and transactions relating to the affairs of this corporation, especially in view of the fact that C. E. Davidson is dead. But the testimony is in the record, and at the earnest insistence of counsel for defendants we have considered it.

The corporation was organized in 1919 by A. F. Davidson, who had charge of its affairs for the first year. Claude L. Johnson, his son-in-law, one of the attorneys for defendants in this case, was given the management of its affairs for the following year. The concern lost money under his management. At the end of Johnson's tenure, Clarence E. Davidson, a son of A. F. Davidson, was made general manager, which position he held until the date of his death in 1933. At times he was secretary and at others president of the corporation, but always manager. The concern prospered under his management. It now has assets valued at more than $62,000.

A. F. Davidson, the organizer, died in June, 1924. His wife and seven children, three sons and four daughters, survived him. He had put into the business about $21,000. His widow and children "reorganized" the corporation in October, 1924. The capital stock was increased from $10,000 to $40,000. As A. F. Davidson had contributed all the capital up to the time of his death, 210 shares of stock were issu-

ed, one-half, 105 shares, to the widow and 15 shares to each of the seven children, C. E. Davidson being one of them. The division was made in this way because the property belonged to the community.

██ The stock certificate then issued to Clarence E. Davidson for 15 shares, representing his one-seventh of one-half of the $21,000, was No. 14. He owned that stock at the date of his death. But these defendants now say that this stock rightfully belongs to them and one of their sisters because at the time of its issuance C. E. Davidson was indebted to the estate of his father, and that the $1,500 represented by the stock was subject to collation. If this be true, the issue cannot be settled in this proceeding. Counsel admit that in their brief, saying on page 57: "Of course, we appreciate that the Court cannot in this mandamus suit determine these issues."

On October 1, 1924, certificate No. 15 for 10 shares of the stock was issued to Mrs. C. E. Davidson, wife of the deceased. This is the stock she now claims to own individually. On the same day certificate No. 16 for 30 shares was issued to C. E. Davidson. They are both signed by Mrs. A. F. Davidson, who was the president of the corporation, and by C. E. Davidson, secretary.

It is now contended that these certificates were issued on the false representation made by C. E. Davidson to the others interested that the corporation owed him these amounts in the way of credits. While these certificates, amounting in the aggregate to $4,000, are dated October 1, 1924, their issuance was authorized at a meeting of the board of directors held on March 15, 1925; the minutes of that meeting read in part as follows:

"Statements of business were read by the Manager as 12/1/24 and 2/1/25 which showed profits that were satisfactory to all present. It was voted that C. E. Davidson be sold $4,000 in stock at par value $100 per share as of October 1, as he had some money due him and was satisfied to accept stock accordingly for same."

There were present at that meeting besides Clarence E. Davidson, the general manager, Mrs. A. F. Davidson, the president; Norman L. Davidson, who was then and had been for a number of years employed as foreman in the factory, and Percy R. Davidson, both stockholders, members of the board, and defendants in this suit; Mrs. St. Martin and Mrs. Brown, also stockholders; and Claude L. Johnson, who represented his wife, Mrs. C. L. Johnson, also a stockholder and member of the board; the said Mrs. Johnson also being a defendant here.

Mrs. A. F., Norman L., and Percy R. Davidson all testified as witnesses. So did Claude L. Johnson, attorney. Yet not one of them denied the accuracy of the minutes of this meeting, nor did they deny that they had approved them. They say now that they could not then and do not now understand how Clarence E. Davidson could have been entitled to a credit of $4,000 on the books of the corporation. But they made no protest then and admit that the books were then open for their inspection. They all say that they "took his word for it" and

did not even look at the books or ask questions. The minutes show that at least two of these defendants at that meeting were appointed on the auditing committee. Not having spoken then, they cannot be heard to protest now, after C. E. Davidson is dead.

 Now as to the certificate No. 15 for 10 shares of that stock issued to Mrs. C. E. Davidson, which she claims as her individual property, it is argued that it never belonged to her but is owned by the community which existed between her and her husband. It is hard to understand what interest these defendants have in raising this question. But if they have an interest, the answer to their contention is found in the record. Mrs. Davidson testified that the stock was bought with her separate funds, which she had turned over to her husband to be used in the business, and one of the witnesses for defendants testified that C. E. Davidson told them (the members of the Board) that his wife had contributed some of her separate funds toward the operating expenses of the corporation and that he had taken credit on the books for the amounts she contributed.

We consider next the 50 shares of stock issued to C. E. Davidson on October 1, 1925, represented by certificate No. 17, signed by Mrs. A. F. Davidson, president, and Mignonne Davidson, secretary. It is argued by defendants that this certificate was issued on the fraudulent representation of C. E. Davidson that he had credits due him, when as a matter of fact he had none, and that no consideration whatever was paid for this stock.

The minutes of the meeting of the board of directors held October 18, 1925, show that:

"C. E. Davidson agreed to take 5000 in stock 3000 cash & 2000 payable 250 per mo. until paid no interest agreed—"

The books show that at that time C. E. Davidson had a credit balance of $2,806.75 due him. The wording of the minutes indicates that it was not desired that this amount be withdrawn from the business and that he "agreed" to take stock. He was to pay in cash only $3,000 and had approximately that amount to his credit, the balance to be paid in monthly installments. All the defendants, including Claude L. Johnson representing his wife and now attorney for the defendants, were present at that meeting. They say they knew nothing about the financial affairs of the corporation except what C. E. Davidson told them. But the minutes of the meeting held on September 20, 1925, read as follows: "N. O. La. 9/20/25 2:30 P. M.

"Meeting of Board of Directors.

"Meeting called to order by Mrs. A. F. Davidson—presiding as president—

"Those present besides President were N. L. Davidson, Mign. Davidson and C. E. Davidson.

"Minutes of previous meeting were read and it was moved by N. L. D. and seconded by Mign. Davidson that they be adopted as read.

"Read report of statement of affairs of company as April 4 and September 1—also letters regarding financial affairs. Discussed business conditions as were.

"There was no further business, meeting adjourned."

Claude L. Johnson, the attorney, says he was present at this and other meetings of the board and that the reason that his name was not mentioned in the minutes is that he was not a stockholder.

Despite the fact that defendants testified that C. E. Davidson could not have accumulated enough to enable him to pay for the amount of stock issued to him, there is ample evidence that he could. His salary was then $500 per month and the directors had voted that he be given in addition to his salary a bonus, the amount depending on the earnings of the corporation. The books show that the profits for 1925 exceeded $9,000. C. E. Davidson credited himself with a bonus allowance of about $3,000 for that year. There is a dispute as to whether the sum of $6,354.49 collected from a fire insurance company for "use and occupancy insurance" should be credited to the profit account. It seems that the business was suspended for a while on account of a fire and that the company was carrying what is called "use and occupancy insurance." Experts testified that the purpose of such insurance is to indemnify the insured for loss of profits the company could have made during the time the plant is idle due to fire, and that the sum collected was properly set down on the books as profit. That theory is disputed by an accountant employed by defendants.

However that may be, the facts are that the entries made on the books by C. E. Davidson were not questioned until after his death, and apparently the defendants

were satisfied with his conduct of the affairs, as they later re-elected him manager and increased his salary from $6,000 to $7,200 per year and continued his bonus allowance.

The argument is made that the issuance of this stock was illegal for two additional reasons. The first is that it was not paid for at the time of its issuance. The statute does not prohibit the issuance of stock after the corporate existence has begun for part cash, the balance to be paid in installments. Section 6 of the act provides, among other things, that "when no provision as to time of payment is made in the contract of subscription, shares shall be paid for on the call of the board of directors." Paragraph 3. It provides further (paragraph 4) that in case the subscriber defaults on his payments the board of directors may "sell his shares by public auction" after giving notice of the place and time of the sale with a "brief description of the shares to be sold."

Secondly, it is contended that the issuance of this stock was illegal because it was in excess of the amount of authorized capital stock. We find no merit in this contention. At the board meeting held on October 19, 1924, "after due notice to the stockholders," it was resolved "that article 3 of the Charter * * * be amended and re-enacted so as to read as follows:" Then follows the article as amended, increasing the capital stock from $10,000 to $40,000. by neglect or oversight on the part of the secretary or the attorney for the corporation, this resolution was not forwarded to the secretary of state and by him recorded as required by law until February 13, 1926.

Counsel argue that the amendment did not go into effect until that date.

Even if that be true in the most technical sense, the facts are that this objection was raised as an afterthought. The directors thought all along that the amendment took effect on the date the resolution was adopted, because at the meeting in 1925, when the issuance of this stock was authorized, it was provided that its issuance should take effect as of October 1, 1924. The parties having acted in perfect good faith; believing at the time the stock was issued that the charter had been amended and not having called into question the validity of the issuance of the stock until the lapse of more than eight years, the complaint now made comes too late.

■ The above 95 shares of stock were issued to C. E. Davidson originally and were in his hands at the time of his death. That all this stock was lawfully issued to and paid for by him is proved to our entire satisfaction.

He purchased 150 shares of the stock in the year 1933. The certificates representing the shares purchased were all indorsed by the holders of them and delivered to him, and all but one, No. 20 for 5 shares issued to George J. Gueno, Jr., were transferred to him on the books of the corporation and new certificates in lieu of those surrendered were issued in the name of C. E. Davidson.

■ The fact that he did purchase this stock is not disputed. The contention is that the purchase price was paid with funds belonging to the corporation. He did not pay all cash for some of this stock. He purchased 105 shares from his mother, Mrs. A. F. Davidson, and agreed to pay her the par value, $10,500. The contract is in writing and shows that he paid her $3,500 cash, the balance to be paid in two equal annual installments. He paid all cash for some of the other stock, but not for all of it. All payments were either by checks or by drafts which he drew on the corporation. This gives rise to the contention that he paid for the stock with funds belonging to the corporation. This contention falls for lack of proof. It is shown that he never had a personal account with any bank. His entire salary, which for several years prior to the date of his death was $7,200 per annum, was credited to his account on the books of the corporation, as were all amounts which he claimed as bonuses. All the drafts and checks he drew for his expenses were drawn on the corporation and charged to his account. The total payments made by him for the 150 shares of stock purchased in 1933 amounted to $6,234.33 according to plaintiff's figures, or $6,999 according to calculations made by counsel for defendants. It was shown that in that year he borrowed $4,600 on his life insurance policies for the purpose of buying this stock, and this amount, like all other amounts due him, was credited to his account on the books of the corporation. Deducting the amount borrowed from the amount he actually paid out on purchases of stock, there is to be accounted for a balance of from $1,634 to $2,399. According to the books he had to his credit on September 30, 1932, the sum of $4,689. The corporation made a net profit of $9,125 in the year 1933, out of which he was entitled to a bonus, the amount of which is disputed.

But considering the balance he is shown to have had in September, 1932, the deposit of $4,600 borrowed from insurance companies, and the fact that he was drawing a monthly salary of $600, it is readily seen that he could have made the payments for the stock with his personal funds. It is true that the books show that his account was overdrawn at the time of his death. But that fact does not prove that he was buying this stock with funds belonging to the corporation.

There is no merit in the contention of Claude L. Johnson, the attorney, who held a voting trust agreement signed by Mrs. A. F. Davidson and others prior to the date on which they sold their stock, that plaintiff cannot now vote the stock. One reason is that the law relating to voting trust agreements (Act No. 250 of 1928, § 33) was not complied with, and another reason is that subsequent to the date on which the parties signed that agreement they sold their stock and the transfers were made on the books of the corporation.

For the reasons assigned the judgment appealed from is affirmed.

ROGERS, J., absent.

175 So. 763
**SMITH v. KENNON et al.**
No. 34288.

June 21, 1937.