## Kaufman v. Leff

*E. J. McDaniel, Elder W. Marshall, F. T. Ikeler* and *Reed, Smith, Shaw & McClay,* for complainant.

*Linn V. Phillips, Samuel Silverman, Albert C. Hirsch, Hirsch, Schumaker & Bash,* for respondent.

CARR, P. J., September 16, 1946.—This is an action in equity brought to determine the beneficial ownership of certain shares of the capital stock of a business corporation originally issued as qualifying shares to one of its directors, and to establish the existence of a trust therein by the terms of which he was to hold and vote the shares until the beneficial owners thereof should jointly appoint a successor trustee or agree to terminate the trust.

Plaintiffs are Nathan Kaufman and Joseph W. Ray, Jr., and defendants Samuel Leff and N. Kaufman's, Inc. In their bill plaintiffs allege that Kaufman and Leff purchased during the late depression by equal contributions the assets and going business of a retail department store in failing circumstances located in Uniontown, orally agreeing with each other at the time to incorporate the business and carry it on under Kaufman's management as joint and equal owners; that they, together with Ray, an attorney-at-law acting as their solicitor, then organized N. Kaufman's, Inc., under the laws of Pennsylvania, and transferred the assets and business so acquired by them to the corporation in exchange for all its capital stock, of which an equal number of shares was issued to each of them or their nominees respectively, and the remainder to Ray upon the oral agreement made at that time that he should hold the shares issued to him in trust, half for Kaufman and half for Leff, until they should jointly request the transfer thereof either to themselves or to some other person, and that in the meantime he should serve as a director and as an arbitrator of any differences that might arise between them, and in the event of the death of either of them he should act to protect the interests of the estate of the deceased; that at the time the shares were issued to Ray he had endorsed the certificates in blank, executed and attached to it a written declaration of his trust, and delivered

both documents to the corporation; that subsequently, without the knowledge or consent of plaintiffs, Leff obtained possession of the certificate and has since presented it at the office of the corporation demanding that the shares represented by it be transferred to him. The prayer of the bill is that the transfer be enjoined and that legal title to the shares be adjudged to be in Ray in trust for the uses and purposes and upon the terms and conditions stated.

Defendant Leff filed an answer to the bill denying that he and Kaufman had purchased the assets of the store as joint and equal owners or that he had ever agreed that Kaufman should have an equal number of shares of the stock of the corporation, denying that any of the shares belonging to Kaufman had been issued to Ray, and denying the trust alleged. On the contrary, he averred that he had purchased with his own money the assets transferred to the corporation, on the express condition that he should have control; that the shares in question belonged to him and had been issued in Ray's name for the sole purpose of qualifying him as a director; and that at the organization meeting of the corporation Ray had endorsed the certificate and handed it to him, after which it had been continuously in his possession until he presented it for transfer. He admitted that he had taken Kaufman's note for half the money he laid out, and that the note was subsequently paid, but he averred that at the time he had regarded it as of no value. Accordingly, he prayed that the shares represented by the certificate be adjudged to be in him, and that the corporation be ordered to transfer them to him.

The controversy was previously before us in another form when, after the corporation had refused to transfer the shares to Leff, he brought an action of mandamus to compel it to do so. We then held that before the corporation could be compelled to make the transfer after notice of the conflicting claims, it was entitled

to the protection of a judicial decree in an adversary proceeding binding upon all parties in interest, and that such a decree could not be entered in an action of mandamus: Leff v. N. Kaufman's, Inc., 3 Fayette 329. On appeal to the Supreme Court our judgment was sustained: Leff v. N. Kaufman's, Inc., et al., 342 Pa. 342.

## Findings of fact

1. On November 12, 1932, plaintiff Nathan Kaufman, at the time a merchant in business at Brownsville, in this county, and defendant Samuel Leff, then and now a capitalist of Pittsburgh, purchased for $10,000 the assets and good will of a department store in the City of Uniontown known as Rosenbaum's, pursuant to an agreement between them that they would do so for the purpose of engaging in that business in the same location under Kaufman's management as joint and equal owners; that Leff would advance $30,000 to pay the purchase price and to provide necessary working capital; that Kaufman would execute and deliver to Leff his promissory note for $15,000, and that they would form a corporation, transfer the business to it in exchange for its capital stock, and cause half the total number of the shares thereof to be issued to each of them.

2. At the time of the transaction aforesaid, Leff deposited $30,000 in bank to the joint account of himself and Kaufman, out of which the purchase price of Rosenbaum's was paid, and Kaufman executed and delivered to Leff his promissory note for $15,000, payable on demand, which note Kaufman subsequently paid in full with interest.

3. On September 12, 1933, after a delay caused by the filing of objections to the corporate name they had originally proposed to use, Kaufman, Leff, and plaintiff Joseph W. Ray, Jr., their solicitor, as incorporators and first directors obtained from the Department of

State of this Commonwealth, under the Business Corporation Law, a certificate of incorporation of N. Kaufman's, Inc., corporate defendant, with an authorized capital of $25,000, consisting of 250 shares of one class only and of the par value of $100 each; and on September 15, 1933, at the organization meeting of the corporation, Kaufman and Leff transferred to it the assets of the business they then jointly owned in exchange for all its capital stock, of which, on that day, by their direction, 122 shares represented by certificate no. 1 were issued to Kaufman, 110 shares represented by certificate no. 2 to Leff's son and nominee, Marshall Leff, 12 shares represented by certificate no. 3 to Leff, and six shares represented by certificate no. 4 to Ray. As of that date the assets so transferred to the corporation by Kaufman and Leff were valued by the stockholders and directors at $30,000, of which $25,000 was credited on the books to capital, and $5,000 to paid-in surplus. On July 12, 1934, Kaufman transferred 100 shares of his stock to his wife, Dora Kaufman. So far as the evidence discloses, no further transfers have been made. From the date of the organization of the corporation to the present, Leff has been its president and Kaufman its secretary, and they, with Ray, have constituted its board of directors.

4. On January 12, 1934, Kaufman and Leff each contributed $15,000 in cash to the corporation to provide additional working capital, and on January 31, 1935, and again on January 6, 1936, they each contributed $7,500 for that purpose, all of which, amounting to $60,000, was credited by their direction to paid-in surplus.

5. Out of the net earnings of the corporation, which to January 31, 1946, have amounted to $382,500, two dividends have been paid, the first on January 16, 1937, amounting to $32,500, of which Kaufman and his wife together received $16,250 and Leff and his son together

$16,250, all of which the four stockholders then contributed to the corporation as paid-in surplus; and the second on January 22, 1938, amounting to $25,000, of which Kaufman and his wife likewise received $12,500 and Leff and his son $12,500. No dividends have ever been collected or received by Ray.

6. The six shares of stock represented by certificate no. 4 were issued to Ray by the joint direction of Kaufman and Leff, who signed the certificate as secretary and president, respectively, for the purpose of qualifying him as a director and without the payment by him of any consideration therefor to either of them or to the corporation. He immediately endorsed the certificate in blank, and within two or three weeks sent it, with the stock certificate book and the organization minutes which he had in the meantime prepared, to the office of the corporation in the store, where it was received by Kaufman and lodged in a safe.

7. Some time after certificate no. 4 had been received at the store, Leff obtained possession of it without the knowledge or consent of Kaufman or Ray, and on January 3, 1940, he presented it, through his attorney, to the corporation at its office, with a demand that the six shares represented by it be transferred to him on the books of the corporation, which demand Kaufman, as its secretary, refused. The certificate has since remained in the possession of the corporation.

8. Kaufman and Leff are each the beneficial owners of three of the six shares of the capital stock of the corporation represented by certificate no. 4.

### Discussion

The Business Corporation Law of May 5, 1933, P. L. 364, sec. 511, 15 PS §2852-511, provides that two or more stockholders may, by agreement in writing, transfer their shares to any corporation or person for the

purpose of vesting in the transferee all voting or other rights pertaining to such shares for a period not exceeding 10 years, upon the terms and conditions stated in the agreement. It further provides that certificates of shares transferred for that purpose shall be issued to the transferee as voting trustee, and that it shall be made to appear thereon and on the books of the corporation that they were issued pursuant to the agreement. Consequently, we have not thought it necessary to find whether or not Kaufman and Leff agreed that Ray should hold and vote the stock issued to him until they should jointly request him to surrender it, since the agreement, if made, was not put in writing by them, limited in duration, or noted either on the certificate or the books, and therefore contravenes the statute.

Plaintiffs contend that the statute applies only to dry or passive trusts of corporate stock created in order to vest voting rights in persons other than the shareholders as an end in itself, and not active trusts created, as they maintain is here the case, in the interests of the shareholders themselves for a legitimate business purpose to which the possession of voting rights by the trustee is merely subservient. They point out that previous to its enactment the general public policy of the law as declared by the courts had been to prohibit the separation of the voting power of stock from its beneficial ownership, yet trusts created to promote some definite policy of apparent benefit to the shareholders had been fully sanctioned, citing Boyer v. Nesbitt, 227 Pa. 398, and Commonwealth ex rel. v. Roydhouse, 233 Pa. 234; and they argue from the judicial history of the two types of trusts that the legislative intention was simply to remove the prohibition against the former on the conditions prescribed in the statute, and not to impose any new restrictions on the latter. In addition they maintain that the agreement

between Kaufman and Leff is valid and irrevocable as a common-law contract of arbitration.

It may be conceded that trusts of corporate stock vesting in the trustee the voting rights to the shares as the means to a legitimate end, such as that of ensuring continuity of policy and management, have not in this State been regarded as contrary to public policy, but it does not follow that they are not within the purview of the statute. Its language excludes only those involving the voting rights of a single stockholder. As to those accumulating in the hands of the trustee the shares of two or more shareholders, the terms of the statute are general and comprehensive, and prescribe a complete scheme of integration equally applicable in every detail to all trusts created in order to unify voting. Such pools of stock, which have come to be known as voting trusts, may, to be sure, sometimes be of benefit to the shareholders, but experience has shown that the power to vote as a unit and over a long period blocks of stock belonging to others is liable to abuse, and it seems evident that it was the intention of the legislature to deal with the entire subject regardless of expected benefits, to impose a reasonable limitation in time, and to protect shareholders in every case against any extension of the intended bounds of the trustee's authority by oral testimony, the dangers of which may obviously be all the greater the more plausible the benefits can be made to appear. As was said by the Court of Appeals of New York in construing a similar statute of that state:

"No voting trust not within the terms of the statute is legal and any such trust, so long as its purpose is legitimate, coming within its terms, is legal. The test of validity is the rule of the statute. When the field was entered by the Legislature, it was fully occupied and no place was left for other voting trusts.

"Whatever the rule of the common law may have been, when the Legislature, the source of corporate power and authority, acts, voting trusts become legal when organized in conformity with the statute, and not otherwise. . . .": In re Morse, 247 N. Y. 290, 160 N. E. 374. See also Perry v. Missouri-Kansas Pipe Line Co. et al., 22 Del. Ch. 33, 191 A. 823, Appon et al. v. Belle Isle Corp. et al., 46 A. (2d) 749 (Del. Ch.), Davidson v. American Paper Manufacturing Co., Inc., et al., 188 La. 69, 175 So. 753, and Ballantine, Voting Trusts, Their Abuses and Regulation, 21 Texas L. Rev. 139.

The argument that since the voting rights to the six shares of stock were transferred by Kaufman and Leff to Ray to enable him to arbitrate future differences between them, the pleaded agreement can be sustained as a valid and irrevocable common-law contract of arbitration is also untenable. While at common law an agreement to arbitrate may be oral, and the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161, has not entirely displaced arbitration under the common law, an oral submission is valid only where an oral agreement with respect to the matters submitted is valid and enforcible. Disputes concerning an illegal transaction are not proper subjects for arbitration, for an award in such a case can stand on no higher ground than the original claim: Bunnell v. Reynolds, 205 Mo. App. 653, 226 S. W. 614; 3 Am. Jur. p. 853, sec. 26.

That Kaufman and Leff are in fact each the beneficial owners of three of the shares issued to Ray, just as they and their respective families own in equal shares the rest of the stock, has now been put beyond question. It appears without dispute that, though in the beginning Leff advanced all the original capital, he took a note from Kaufman for a full half of it, which was duly paid; and that each of them has since contributed equally to the paid-in surplus of the corpora-

tion and has received for himself and his family half the dividends on its outstanding stock, including that standing in the name of Ray. Indeed, during the course of his testimony, Leff explicitly admitted, without any attempt to qualify the admission or explain it away, that three of the six shares in Ray's name were Kaufman's: "I don't deny that. They were his." He has thus departed a considerable distance from the position taken by him in his pleading and in his previous suit, but nevertheless he continues to insist that Kaufman did agree with him that he should have control, and that conformably to that agreement the six shares were set apart in Ray's name and the certificate therefor indorsed and delivered by Ray to him; and he contends that he is therefore entitled to have all the six shares transferred to him in order that he may exercise control. Clearly, however, if such an agreement was in fact made between Kaufman and him as to the six shares in question, of which they each actually owned three, it is as unenforcible as the agreement that Kaufman pleads, since it too is wholly oral and purports to create a voting trust, the only difference being in the terms of the trust and in the appointment of himself instead of Ray as trustee.

### Conclusions of law

1. The oral agreement pleaded by plaintiffs in paragraphs 3, 5, 6, and 7 of their bill with respect to the six shares of stock issued to Ray and represented by certificate no. 4 constitutes, if made, an attempt to create a voting trust contrary to the provisions of section 511 of the Business Corporation Law, and is invalid and unenforcible.

2. The oral agreement asserted by defendant, Leff, with respect to the six shares of stock issued to Ray and represented by certificate no. 4 constitutes, if made, an attempt to create a voting trust contrary to the

provisions of section 511 of the Business Corporation Law, and is invalid and unenforcible.

3. Defendant Leff is not entitled to have the six shares of stock represented by certificate no. 4 transferred to him on the books of the corporation.

4. Plaintiffs are entitled to have certificate no. 4 retained and canceled by the corporation.

5. Plaintiff Kaufman is entitled to have three of the six shares of the capital stock of the corporation now represented by certificate no. 4 remain in the name of Ray, and to have a new certificate therefor issued by the corporation to Ray.

6. Defendant Leff is entitled to have issued to him by the corporation a new certificate for three of the six shares of the capital stock of the corporation now represented by certificate no. 4.

7. Plaintiff Kaufman and defendant Leff should each pay half the costs of this proceeding.

## Decree nisi

And now, September 16, 1946, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. That defendant N. Kaufman's Inc., retain and cancel share certificate no. 4 issued to Joseph W. Ray, Jr., for six shares of its capital stock, and in lieu thereof issue to Joseph W. Ray, Jr., and to Samuel Leff new share certificates for three shares each.

2. That defendant Samuel Leff, as president, and plaintiff Nathan Kaufman, as secretary of defendant, N. Kaufman's, Inc., do and perform all things necessary to execute this decree, and they, the said corporation, and all other persons who may be or become officers thereof are hereby permanently enjoined from transferring the shares represented by certificate no. 4 except as herein commanded.

3. That plaintiff Nathan Kaufman and defendant Samuel Leff each pay half the costs of this proceeding.

The prothonotary is directed to enter this decree nisi and to give notice of its entry to the parties or their counsel of record, and if no exceptions are filed within 10 days after notice, to enter it as the final decree, as of course.