## H. SEELIGSON & Co. v. J. M. BROWN.

(Case No. 1073.)

1. TRANSFER OF STOCK — GARNISHMENT — ATTACHMENT.— A by-law of a private corporation provided that stock of the corporation could only be transferred upon the surrender of the certificate of stock to the president or secretary of the company, "either of whom shall see that the same is canceled, by writing ' *canceled* ' prominently over the face of the certificate, and erasing the name of the president, before issuing a new certificate to be filed away." The statute makes no such provision as a test of ownership. Stock without being transferred on the company's books was delivered by the original owner to B. as collateral security, with the owner's name signed thereon to a blank transfer. In a suit against the original owner by an attaching creditor, B. was garnished. *Held:*

(1) By the delivery and transfer of the certificates of stock B. became the owner of them, and the original owner was divested of any right or interest in them, so long as the debt they were intended to secure remained unpaid.

(2) The by-laws regulating the transfer of stock were merely intended for the protection of the interests of the corporation, and no effect should be given to them further than to attain that object.

(3) Such regulations are not restrictive of the stockholder's right to transfer his stock at pleasure, subject to the charter rights of the corporation, though the purchaser cannot claim a certificate of, or a dividend upon, the shares, unless he first applies for a transfer according to the charter and by-laws.

(4) Such transfer is valid as against an attaching creditor of the vendor, who attaches the shares before he or the corporation has notice through its officers. Following Angell & Ames on Corporations, 11th ed., and cases cited in the opinion.

(5) A judgment ordering the shares to be sold as under execution, and the proceeds to be paid first to B. to the extent of his debt, and the overplus, if any, to be applied to the judgment rendered in favor of the attaching creditors to the extent of the debt remaining unpaid, was proper.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Henry Seeligson & Co. brought suit against B. M. Hobby by attachment to recover the amount of a note sued on for $1,374, and obtained a writ of attachment which was levied on certain lots; also a writ of garnishment against the Galveston City Railway Company, which was served on 9th August, 1877. Garnishee answered that five hundred and twenty-eight certain shares of the stock of the company stood at the time of service of garnishment in the name of defendant Hobby, upon the books of the company, but that James M. Brown claimed the same by previous transfer from Hobby, and asked that Brown be made a party. Brown inter-

vened on the 5th of October, 1877, claiming the shares of stock as having been delivered to him in pledge and as collateral security before the issuance of the writ of garnishment for money loaned to Hobby, which was still owing, and that the stock so pledged was not sufficient in value to pay him the amount so loaned.

The plaintiffs, replying, denied the allegations in Brown's intervention, and alleged that the Galveston Railroad had authority under its charter of incorporation to establish and regulate the mode of transfer of stock; that at the time of the issuance of the shares of stock to Hobby there was in force a regulation and by-law of the company, of which Brown had notice, of which the following was the substance: " Stock can only be transferred upon the surrender of the certificate to the president or secretary at the office of the company, either of whom shall see that the same is canceled by writing ' canceled' prominently over the face of the certificate, and erasing the name of the president, before issuing a new certificate to be filed away."

Plaintiffs alleged that all shares of stock in the company contained upon the face thereof the stipulation that the same were transferable only on the books of the company, in person or by attorney, only upon the surrender of the certificate; that the shares issued to Hobby were liable to the garnishment of plaintiffs, who were creditors of Hobby, because they were never transferred on the books of the company or in any other manner, so as to be binding as against the plaintiffs; that the pretended transfer set up by Brown was fraudulent and void as against plaintiffs, who had no notice thereof, and that the transfer was secretly made and contrived fraudulently to deceive, defraud, hinder and delay the just creditors of Hobby.

The court gave judgment by default against Hobby for plaintiffs' debt; ordered certain lots attached to be sold, and, on hearing the intervention, ordered that the shares of Hobby be sold as under execution, and the proceeds be first paid to Brown to the extent of his debt, and the overplus, if any, to be paid over to the plaintiffs to the extent of their debt remaining, after applying proceeds of lots to be sold under attachment.

It was proved that Hobby delivered the certificates of stock to J. M. Brown with his name signed to a blank transfer — the name of the transferee not having been inserted therein before nor at the trial, as collateral to secure one note for $1,117.50, dated May 12, 1877; another for $1,875, dated May 13, 1877; another for $1,832, dated May 24, 1877, due in sixty and ninety days, and signed "Hobby & Post;" that on the 20th of September, 1877, J. M.

Brown presented the stock certificates with indorsements appearing thereon, as set forth above, to the secretary of the company at its office, and demanded that the same be regularly transferred to him on the books of the company, which was refused on the ground that the writ of garnishment had been served on the company on the 9th of August previously, at which time the said shares stood on the books of the company in the name of B. M. Hobby; that the first notice to the company of any claim to said certificates, or demand of transfer to Brown, was on the 20th September, 1877, when the secretary inadvertently, not remembering that the garnishment had been previously served, made out and delivered to Brown a receipt in substance certifying "that J. M. Brown is entitled to five hundred and twenty-eight shares of stock in the Galveston City Railroad, to be delivered upon surrender of this receipt;" that "Seeligson & Co. had no notice of the transfer or attempted transfer to Brown of the shares, and that the market value of the stock was $5 per share."

*C. L. Cleveland*, for appellants, in support of his proposition that the transfer as against the attaching creditor upon garnishment, to be valid must have been made on the books of the company, in the absence of previous notice to the attaching creditor, cited: General Laws of 14th Legislature, p. 102; Dutton v. Connecticut Bank, 13 Conn., 498; Oxford Turnpike Co. v. Bennet, 6 Conn., 558; Shipman v. Ætna Ins. Co., 29 Conn., 253; 3 Conn., 554; 2 Conn., 578; Union Bank v. Laird, 2 Wheat., 393; People's Bank v. Gridley, Sup. Ct. Ill., 1879; 5 Gray, 373.

On the proposition that no relief could be decreed the intervenor until he had established his debt by judgment, he cited: 7 Gray, 406; 12 Gray, 213; 5 Gray, 558; Hall & Jones v. Jackson, 3 Tex., 309; Mims v. Mitchell, 1 Tex., 447.

*Mann & Baker*, for appellees, that the transfer vested the legal title to the shares, cited: Strange v. H. & T. C. R. R. Co., 53 Tex., 169, 170, 171; Stone v. Brown, 54 Tex., 338, 339; Angell & Ames on Corp. (9th ed.), sec. 564; Daniel on Neg. Inst. (2d ed.), pp. 646, 647, secs. 1708, 1709; Fatman v. Loback, 1 Duer (N. Y.), 354; McNul v. Tenth Nat. Bank, 46 N. Y., 325; United States v. Vaughn, 3 Binn (Pa.), 394; Rogers, Ketcham & Grovesnor v. Stevens, 4 Halst. Ch. (N. J.), 167; vol. 2, part 2, Leading Cases in Eq., 1661, 1665, 1666. See, also, Dickenson v. Cent. Bank, 129 Mass., 283; Boston Music Hall v. Cory, 129 Mass., 435–37.

They cited, also, Bassett *v.* Garthwaite, 22 Tex., 234; Hern *v.* Foster, 21 Tex., 403; Iglehart *v.* Moore, 21 Tex., 502; Drake on Attachment (5th ed.), secs. 451, 452, 527, 608; Bank *v.* Lanier, 11 Wall., 377, 378; Pratt *v.* Till, 28 N. J. Eq., 483.

WEST, ASSOCIATE JUSTICE.— This case bears evidence of having been very carefully and faithfully briefed by both parties. The appellants seem to have presented the merits of their case as fully and as satisfactorily as could be done, or as was desirable it should be done. We have ourselves given a great deal of attention to the main question discussed, and have considered it with more than usual care.

We have no time at present to give at length the reasons why we believe the judgment in the case should be affirmed. We must content ourselves, therefore, with stating as briefly as possible the conclusions on the subject that we have reached.

We are, then, of the opinion that the delivery and transfer, in good faith, for a valuable consideration, in the manner disclosed in the evidence, of the certificates in question to the appellee, carried with it all the rights of the holder, Hobby, to them, and invested the appellee with the ownership, and entitled him to demand from the proper officers of the corporation such action as was necessary for their books to show him to be the true owner.

In other words, by the delivery and transfer of the certificates by Hobby to the appellee, as detailed in the evidence, the appellee became the owner of them, and Hobby was divested of any further right or interest in them, at least so long as the debt they were intended to secure remained unpaid.

Hobby, then, having no interest in the certificates that could be reached either by attachment or execution at the time the writ of garnishment was served, the appellants acquired no rights by the service of such writ as against the prior claim of the appellee.

Speaking of the effect of these transfers of stock, that, like the one under consideration, are not made regularly on the books of the corporation, in the last edition of Angell & Ames on Corporations (11th ed., 1882), the author says: "The charter and by-laws frequently provide that the stock of the company shall be transferable on the books of the company only, or that, to be valid and effectual, the transfer must be registered by the clerk or treasurer of the corporation on the company books; and where the charter required the transfer to be made on the books, the requisition was considered satisfied by a by-law requiring the transfer to be regis-

tered on the books of the company. A very literal construction has been given in Connecticut to such clauses, either in the charter or by-laws of a corporation; the scope and object of such provisions being, in the view of the supreme court of that state, 'to render the purchase of stock secure to any person, if, at the moment of his purchase, the company books did not furnish evidence that it had been previously transferred.' The settled law of Connecticut is that, where such clauses are found in the charter and by-laws, or either, the transfer is invalid and of no effect for any purpose unless made or registered on the books of the company. The *registry is there* deemed the originating act in the change of title; and an entry by the clerk on the deed, 'received for record,' is not considered equivalent to a registry."

"A more liberal construction, and one far more in accordance with their spirit and meaning, has been given to such clauses in charters and by-laws of corporations by the courts of other states, and by the supreme court of the United States. As they are intended merely for the protection of the interests of the corporation no effect is given to them further than is necessary to effect that purpose. It is necessary that an incorporated company should have the means of knowing who are stockholders and members in order that they may know to whom dividends are to be paid, and who are entitled to vote upon the stock; and where the company has a lien upon the stock for debts due to it from a stockholder, that it should have the means of preventing a transfer in derogation of its own rights. To secure this knowledge, and to enable corporations to avail themselves of their lien upon the stock of the company without danger to the rights of purchasers, these clauses are usually inserted in their charters or form a part of their by-laws. Accordingly, where transfers of stock are made without conforming to the requisitions of the charter or by-laws in making them, or having them registered on the books of the company, the better opinion decidedly is that the transfer passes to the purchaser all the right that the seller had; that such provisions were not intended to, and do not, incapacitate the owner of the stock from transferring it at his pleasure, by way of equitable assignment of his interest in it, subject to the charter rights of the corporation, which all must notice, or compel him to own it, unless the corporation allow him to sell, against his will; and the only effect allowed to them seems to be that the purchaser cannot claim a certificate of or a dividend upon the shares, unless he first applies for a transfer, according to the charter and by-laws. Any other proper transfer is equally valid

as between vendor and vendee, and even as against a creditor of the vendor, who attached the shares before he or the corporation, through its officers, had notice of the transfer. In other words, such provisions, whether by charter or by-law, apply solely to the relation between the corporation and its stockholders,— to the questions who shall vote, to whom dividends shall be paid; and enable the corporation to protect any lien it may have upon the stock, or equity in it, as between itself and the stockholder transferring it. They constitute a privilege of the corporation, which may be waived or asserted, at the pleasure of the directors and president." Sections 353, 354.

This is now believed to be the rule most generally adopted. Judge Drake in his fifth edition (1878) of his now standard work on Attachment, indorses strongly the same doctrine. Secs. 527 and 608. In the last edition (1882) of Daniel on Negotiable Instruments, the same rule is pronounced to be the best. Vol. 2, sec. 1708e, 1708f, pp. 720, 721. See, also, Stone v. Brown, 54 Tex., 338; Strange v. H. & T. C. R. R. Co., 53 Tex., 169; Igleheart v. Moore, 21 Tex., 502; Le Gierse v. Moore, 59 Tex., 471.

There are, no doubt, to be found decisions of courts, the opinions of whose judges are entitled to the very highest respect, who seem to hold differently; yet we are satisfied that, both upon principle and authority, the rule above laid down is more correct in point of law, and is the wiser and safer rule to follow in practice.

We do not think it necessary to consider any of the other questions raised and discussed in the briefs of counsel.

We believe that the judgment, under all the circumstances of the case, ought to be affirmed, and it is accordingly so ordered.

AFFIRMED.

[Opinion delivered February 12, 1884.]

Chief Justice WILLIE did not sit in this case.