**KERR v. TYLER GUARANTY STATE BANK et al.   (No. 6952.)**

(Court of Civil Appeals of Texas.   Austin.
April 7, 1926.)

**I. Corporations ⊜⟹129.**

Indorsement in blank and delivery of corporation stock certificate passes legal title to stock as between parties to transfer and creditors of transferor, though no transfer has been made on books of corporation.

**2. Banks and banking ⊜⟹40—Stock, indorsed in blank and delivered by debtor to mother-in-law, belonged to her ,as against transferor's creditors.**

Indorsement in blank of bank stock by party in whose name it was issued and delivery to mother-in-law under contract, whereby she furnished money to purchase stock and retained ownership, passed title to stock to mother-in-law as against judgment creditors of son-in-law.

**3. Husband and wife ⊜⟹126(1) — Personal earnings of wife are not her separate property (Laws 1921, c. 130 [Vernon's Ann. Civ. St. Supp. 1922, art. 4621]).**

Personal earnings of wife are not made her separate property by statute, as was attempted to be done with revenues from wife's separate property by Laws 1921, c. 130 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621).

**4. Husband and wife ⊜⟹247.**

Wife's personal earnings cannot be made her separate property by statute, in view of Const. art. 16, § 15.

**5. Husband and wife ⊜⟹112 — Statute exempting wife's personal earnings from debts of husband is valid (Rev. St. 1911, art. 4621, as amended in 1913, 1917, and 1921 [Vernon's Ann. Civ. St. Supp. 1922, art. 4621]; Const. art. 16, § 15).**

Rev. St. 1911, art. 4621, as amended in 1913, 1917, 1921 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621), exempting wife's personal earnings from debts of husband, is valid, though, under Const. art. 16, § 15, Legislature cannot enlarge separate property beyond constitutional limits.

**6. Husband and wife ⊜⟹131(1)—Wife claiming part of deposit in husband's name as her separate property has burden of overcoming presumption that it is subject to garnishment for his debts.**

Wife claiming part of deposit as her separate property has burden of overcoming presumption that deposit standing in name of husband is subject to garnishment for his debts.

**7. Husband and wife ⊜⟹133(9) — Without showing as to who furnished capital for upkeep of house, evidence of wife's earnings from keeping boarders was not sufficient to show that such earnings, deposited in husband's name, were exempt from husband's debts .(Rev. St. 1911, art. 4621, as amended in 1913, 1917, and 1921 [Vernon's Ann. Civ. St. Supp. 1922, art. 4621]).**

Evidence that wife earned money by operating house and keeping boarders *held* not suffi-cient to show that earnings deposited in husband's name were exempt, under Rev. St. 1911, art. 4621, as amended in 1913, 1917, and 1921 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621), from liability for husband's debts, where there was no showing as to who furnished capital for upkeep of house.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Garnishment by E. O. Kerr against the Tyler Guaranty State Bank, in which Mrs. Addie Moore and another intervened. From a judgment for interveners and allowance of cost and attorney's fees to garnishee, plaintiff appeals. Affirmed in part, and in part reversed and remanded.

Alden S. Young, of Brownwood, for appellant.

McCartney, Foster & McGee, of Brownwood, for appellees Tyler Guaranty State Bank, garnishee, Mrs. Addie Moore, and Mrs. Grace Skinner.

McCLENDON, C. J.   On February 1, 1917. E. O. Kerr recovered a judgment in the district court of Brown county against Earle Skinner for the sum of $886.93. Several payments were made on the judgment, leaving a balance, on June 16, 1924, of $320.62. On that date Kerr sued out a writ of garnishment, naming the Tyler Guaranty State Bank garnishee. The latter filed an answer, disclosing that Skinner was the record owner of 10 shares of the bank's capital stock of the par value of $100 each, and that there was on deposit with the bank to the credit of Skinner the sum of $137.39. Mrs. Addie Moore, the mother-in-law of Skinner, intervened in the garnishment, and asserted ownership of the bank stock standing in the name of Skinner, upon the allegation that it was purchased for her with her individual funds; that it was issued in the name of Skinner by agreement for the purpose of permitting Skinner to qualify as a director of the bank; that immediately upon its issuance on April 4, 1924, the stock certificate was indorsed in blank by Skinner, and delivered to her as her own property; and that she had been the owner, and in possession, of the certificate ever since that date. The proof upon this issue which consisted of the contract, which was in writing, and the uncontradicted testimony of Mrs. Moore, supported the allegations of her plea of intervention. The contract between her and Skinner, which was of date April 4, 1924, recited that Mrs. Moore furnished the money to purchase the stock; that by agreement of the parties "said stock is issued in the name of L. E. Skinner, * * * but ownership of said shares of capital stock is retained by party of the first part (Mrs. Moore), and all dividends are hers." It also recited that the certificate had

been indorsed by Skinner and was in the possession of Mrs. Moore, "but no such transfer has ever been made on the books of the above named bank." The agreement showed on its face that the purpose of issuing the certificate in the name of Skinner was "that he may have directorship in the above-named bank."

Mrs. Grace Skinner, wife of Earle Skinner, also intervened, claiming that $105 of the $137.39 on deposit with garnishee "was, and is, her separate estate, and that it did not belong at that time, and does not now belong, to the said Earle Skinner." The only evidence in support of this allegation is the uncontradicted testimony of Mrs. Skinner, which we quote in full:

"Of the $137.39 as set up in garnishee's answer on deposit in the Tyler Guaranty State Bank, in the name of L. E. (or Earle) Skinner —$105 thereof was my separate property. I earned this money by operating the house at home and keeping roomers and a boarder."

Upon this evidence the court entered judgment in favor of Mrs. Moore for the bank stock and in favor of Mrs. Skinner for $105 of the amount on deposit with the garnishee. Out of the remainder so on deposit, $32.39, the court ordered the costs paid, including an attorney's fee of $25 to the garnishee. The balance was ordered paid to Kerr. From this judgment Kerr has appealed.

The only issues which the appeal presents involve the sufficiency of the pleadings and the evidence to support the judgment in favor of Mrs. Moore for the stock and of Mrs. Skinner for $105 of the amount of the deposit. We shall only consider the sufficiency of the evidence, since the pleadings are ample, if the evidence warrants recovery.

Appellant's contention with reference to the bank stock is that the agreement between Mrs. Moore and Skinner was void, in that it was against public policy, and a fraud upon the banking laws.

We may concede, for the purpose of this appeal, the correctness of this contention, and that as between Mrs. Moore and Skinner the agreement as long as it remained executory was unenforceable. It may also be conceded for the purpose of this appeal that, if the certificate had remained in the possession of Skinner, the invalidity of the agreement between him and Mrs. Moore would have been available to appellant.

[1] Under the decisions in this state, however, the indorsement in blank and delivery of a corporation stock certificate passes the legal title to the stock as between the parties to the transfer and as to creditors of the transferor, regardless of whether the transfer has been made on the books of the corporation. Seeligson v. Brown, 61 Tex. 114; Tombler v. Ice Co., 43 S. W. 896, 17 Tex. Civ. App. 596 (writ of error denied); Cotton-Oil Co. v. Bank (Tex. Civ. App.) 56 S. W. 552;

Bank v. Lumber Co., 70 S. W. 768, 30 Tex. Civ. App. 412.

In some of the states, in order to effect a valid transfer as against creditors of the transferor, it is necessary that the transfer be made on the books of the corporation. See 14 C. J. p. 755, § 1153. The rule in this state as above announced seems to be in accord with the weight of authority. See 14 C. J. p. 755, § 1154, and page 757, § 1156. The reason for these different rules has been attributed for the most part to the peculiar terms of the statutes of the several states bearing upon the question, and to difference in construction of similar statutes by the courts of different states. Lipscomb v. Condon, 49 S. E. 392, 56 W. Va. 416, 67 L. R. A. 670, 107 Am. St. Rep. 938.

[2] The purpose of the requirement that the transfer be made on the books of the corporation as pointed out in the Seeligson Case is to protect the corporation, its stockholders and creditors. No right of the corporation, its stockholders, or creditors, however, is here involved. As between the parties to the transfer it is quite clear that the transaction as shown by the uncontradicted testimony evidenced a complete passing of the legal title to Mrs. Moore. It is equally clear that Mrs. Moore could at any time, without any further act of Skinner, and even against his protest, have had the transfer made on the books of the company by surrendering the certificate in her possession and having a new certificate issued in her favor. It is further equally clear that Skinner could not have recovered the certificate from Mrs. Moore, and as between him and her the title of the latter was perfect. Under the above decisions of this state the creditors of Skinner stood in no better position than Skinner himsef, and the trial court correctly rendered judgment in Mrs. Moore's favor for the stock.

[3-5] With reference to the claim of Mrs. Skinner we think the evidence insufficient to warrant the judgment. Her intervention is predicated upon her pleading that the $105 was her separate property. The contention is made in her brief that this is true, because the evidence shows that the amount in controversy was her personal earnings. Our statutes do not make the personal earnings of the wife her separate property, as is attempted to be done with reference to rents and revenues derived from her separate property. Chapter 130, Laws of 1921 (Vernon's Ann. Civ. St. Supp. 1922, art. 4621). Even if there had been an attempt, however, to make the wife's personal earnings her separate property, this could not be effected by statute under the decision in Arnold v. Leonard, 273 S. W. 799, 114 Tex. 535, in which the Supreme Court held that the Legislature was without power to enlarge the separate property of the wife beyond that prescribed in Const. art. 16, § 15. Article 4621, R. S. of 1911, as amended in 1913, 1917, and 1921 (Vernon's Ann. Civ. St.

Supp. 1922, art. 4621), provides that the wife's personal earnings shall not be subject to the payment of debts contracted by the husband. A like provision with reference to rentals from the wife's separate property was held valid in Arnold v. Leonard, above. This decision requires the same ruling with reference to the wife's personal earnings.

In cause No. 6391 (Osborne v. Sykes) this court held in an opinion delivered by Associate Justice Jenkins, on October 14, 1921 (which does not appear to have been published), that the proceeds of a hotel business which the wife conducted upon capital raised by pledge of her separate property did not constitute her personal earnings within the meaning of the 1913 amendment. The evidence in that case showed that the wife conducted the hotel, performing some of the labor personally, employed the help, and paid her husband a stipulated salary as hotel clerk. The decision in that case was rested upon the following holding:

"Our construction of this statute is that 'personal earnings' means earnings by physical or mental labor, unaided by capital, except in so far as may be necessary to supply the means of performing such labor as a necessary incident of same. Such, for instance, as the ax of a wood cutter, or the pen, ink, and paper of a writer.

"In support of this interpretation we cite Shelly v. Smith, 13 N. W. 419, 59 Iowa, 453; Brown v. Hebard, 20 Wis. 326, 91 Am. Dec. 408, note to same, 421; Youst v. Willis, 49 P. 56, 5 Okl. 170; McCoy v. Cornell, 40 Iowa, 457; Prince v. Brett, 47 N. Y. 402, 21 App. Div. 190; In Matter of Wyman, 78 N. Y. S. 546, 76 App. Div. 295; Freeman on Execution, 234; Millington v. Laurer, 56 N. W. 533, 89 Iowa, 322, 48 Am. St. Rep. 385."

On January 11, 1922, the question involved in that case was certified to the Supreme Court. Later it was referred to the Commission, and reported upon by that court, but, on December 5, 1923, was withdrawn from the Commission by the Supreme Court, in which court it was undecided when a compromise was effected by the parties, and the cause dismissed by agreement.

In the case of Cauble v. Refining Co., 274 S. W. 120, in which the Supreme Court adopted the opinion of the Commission, it was held that, where the wife engages in business on her own account, using therein only her own capital or the proceeds of her own earnings, she is liable for debts contracted by her in pursuance of the business.

The court held, under the facts of that case, that the proceeds of the business were the separate funds of the wife; but the court did not rest their decision on this holding alone. We quote from the opinion:

"It seems, too, that the power of the plaintiff in error to enter into these contracts of purchase, and thereby bind herself, should be sustained, even if the oil well rigs and machinery were not her separate property. They were personal earnings of the plaintiff in error. They were acquired by the efforts of the wife alone."

After quoting the 1913 amendment to Rev. St. art. 4624 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4624), the court say:

"The claim is also made that a married woman engaged on her own account in the oil business cannot bind herself by an enforceable contract to purchase and pay for fuel oil used in the course of such business. It is true Mrs. Cauble was engaged in the business of buying and selling oil leases. She had not been granted the general right to make contracts in relation thereto, and could not do so and thereby bind herself personally. However, the fact that she was engaged in a trading business did not deprive her of the exclusive power given her by statute to manage and control either her separate property and estate, or her personal earnings, and to make such contracts as were proper or necessary to such exclusive management and control. Notwithstanding she was engaged in the oil business without the power to make contracts generally, yet she was clothed with the same power to make contracts in the management and control of her separate property and her personal earnings, as was a married woman not engaged in such business."

[6, 7] We think the clear effect of the decision in that case is that the earnings of the wife in a business conducted by her alone, in which she employs only her own capital, or capital accumulated from her personal earnings, constitutes personal earnings of the wife within the meaning of the statute. In the present case the entire deposit stood in the name of the husband, and presumably it was subject to garnishment for his debts. The burden rested upon the wife to overcome this presumption. We think the evidence fell short of so doing. The earning of money "by operating the house at home and keeping roomers and a boarder" involves, not labor only, but capital also—the furnishing of meals, house rent, and supplies. We may concede that the evidence sufficiently shows that the labor involved was that of the wife, but there is no showing as to who furnished the capital; and therefore we think the evidence is insufficient to support the trial court's judgment on this issue.

The judgment of the trial court awarding to Mrs. Moore the 10 shares of stock in the garnishee bank is affirmed. The judgment in so far as it awards to Mrs. Skinner $105 of the proceeds of the deposit in the garnishee bank in the name of Earle Skinner is reversed, and the cause remanded.

Reversed and remanded.