**WILLIAMS et al. v. BARTLETT et al.**

No. 3060. .

Court of Civil Appeals of Texas. .Waco. .

Dec. 11, 1952.

Rehearing Denied Feb. 5, 1953.

Richey, Sheehy & Teeling, Waco, for appellants.

Sleeper, Boynton, Darden & Burleson, Waco, for appellees.

TIREY, Justice.

This suit involves the last will and testament of the late Lud T. Williams, an eminent member of this bar. It is in his own handwriting and we quote the pertinent part:

"2. I give to my beloved & faithful wife, Jimmie Robertson Williams, all my property, real, personal & mixed —to do with as she chooses—trusting her to do the just and proper thing toward all relatives but leaving everything wholly to her discretion—she knows about what I would wish her. to do."

The testator was married one time only and no children were born to him and his wife.

At the close of the testimony appellees presented their motion for an instructed verdict, which was overruled.

The court submitted five issues to the jury:

"1. Do you find from a preponderance of the evidence, if any, that at the time of the execution of the will dated May 15, 1926, by Lud T. Williams he had an agreement with his wife, Jimmie Robertson Williams, that he would leave all his property to her with the agreement on her part that she would, after his death, execute a will leaving one-half of all of the property of which she might die seized and possessed to his family?". To which the jury answered: "Yes."

"2. Do you find from a preponderance of the evidence, if any, that after

the execution of the will dated May 15, 1926, by Lud T. Williams, he stated in the presence of his wife, Jimmie Robertson Williams, that he had made a will leaving all of his property to her, under an agreement whereby she agreed to execute a will after his death, leaving one-half of all property which she might have at the time of her death to his family?" To which the jury answered: "Yes."

"3. Do you find from a preponderance of the evidence, if any, that the said Jimmie Robertson Williams, when such agreement was stated to her by her said husband after the execution of such will, if it was so stated to her, agreed to carry out the terms of such agreement, if any?" To which the jury answered: "Yes."

"4. Do you find from a preponderance of the evidence, if any, that Lud T. Williams had an agreement with his wife, Jimmie Robertson Williams, that he would leave all of his property to her at his death, and that she, Jimmie Robertson Williams, had the right to dispose of such property by her will wholly at her discretion?" To which the jury answered "No."

"5. Do you find from a preponderance of the evidence, if any, that the agreement, if any you have found, between Lud T. Williams and his wife, Jimmie Robertson Williams, with reference to the ultimate disposition of his property, contemplated only the wishes and desires of the said Lud T. Williams, deceased, and created no obligation on her to carry out such wishes and desires?" To which the jury answered: "It did obligate her."

The court overruled the plaintiffs' motion for judgment on the verdict of the jury and granted defendants' motion for judgment non obstante veredicto and decreed that plaintiffs take nothing against the defendants by virtue of their asserted cause of action against them, and decreed that defendants go hence without day. Plaintiffs have perfected their appeal to this court.

Mrs. Jimmie Robertson Williams probated the will of her late husband and qualified as executrix and took over the estate and used and enjoyed it and before her death executed her last will and testament without making any provision for the family of the late Lud T. Williams, and her will bequeathed all of the estate on hand at the time of her death to her side of the family, and such will has been admitted to probate and the appellees here are the beneficiaries and legatees under such will.

It is appellants' position here that their suit is not one to construe the will of the late Lud T. Williams, but is rather a suit to engraft a constructive parol trust on one-half of the property belonging to the estate of Mrs. Williams at her death, based on her agreement with her husband made at the time of and after the execution of the will.

In keeping with their position they have assailed the decree entered on three points. One is substantially that the court erred in overruling their motion for judgment and in entering judgment for defendants non obstante veredicto because the jury verdict was in their favor and was fully supported by pleadings and evidence; (2) because the jury found that at the time Lud T. Williams executed his will he had an agreement with his wife that he would leave all of his property to her and she agreed that she would, after his death, execute a will leaving one-half of all the property of which she might die seized and possessed to his family; and (3) because the jury found that after the execution of the will Lud T. Williams stated in the presence of his wife that he had executed his will under an agreement on her part to execute a will after his death leaving one-half of all the property she might own at her death to his family, and that she agreed to carry out the terms of this agreement.

A statement is necessary. On May 15, 1926, Lud T. Williams made his last will and testament, the pertinent parts of which are hereinabove set out. Over timely objection of appellees parol testimony was

admitted as to conversations with the late Lud T. Williams and his wife. Honorable W. E. Terrell testified to the effect that he was formerly associated with the law firm of Williams & Williams, and knew Mrs. Williams quite well; that shortly after Lud .T. Williams' death on May 15, 1928, he witnessed Mrs. Williams' will at the request of the late Clay McClellan, member of the Williams' firm; that he had a conversation with Mrs. Williams at the time she executed her will and she told him that she and her husband had an understanding; that he had willed her everything and she had willed him everything and at their death each would give half to the Williams family and half to hers; that her husband had a very strong love for his family and that there was a very close relationship between her husband and all of his family.

The Honorable Holvey Williams, a nephew of testator, testified to the effect that his uncle was the strongest family man that he ever knew; that he was always preaching to him to "stay with your family and trust your family"; that his uncle called him into his office sometime during the year 1926, at which time Mrs. Williams was there, and that his uncle said to him in the presence of his wife, "Holvey, I have made my will and I have left everything to Jimmie to do with as she pleases, but she has agreed at my death that she will make a will, leaving half the property to the Williams family and half to her family, the Robertsons;" that he said to him, "Uncle Lud, wouldn't it be better for you to put that in' writing?" to which his uncle replied, "No, we don't want any writing. Jimmie will do what she has agreed to do, provided you can get her to agree to something. She has agreed to do this, and she will do it." Mrs. Williams then said: "I certainly will. It's not only here I have agreed to it, but I will do it, and it's what I would want to do anyhow." He further testified that while his uncle was an outstanding lawyer, he did not deal with his family as he dealt with his clients or strangers; that when he (Holvey) was with the firm and would take trips for the firm he tried to keep an itemized expense account, but his uncle would not look at it. He dealt with his brother Newt Williams the same way. The testator and his brother Newt were law partners for more than thirty years and they both "boasted" that there had never been an accounting between them.

The will of Mrs. Jimmie Robertson Williams, dated May 28, 1928, provides in part:

"By the will of my beloved husband, Lud T. Williams, deceased, I have received all property which he owned at death with the unqualified right to dispose of same during my life and after death as I see fit. However, I know what his wish was with reference to the final disposition of our estate, which is also my wish, and in strict conformity therewith it is my will and desire and I direct that upon my death my estate be disposed of as follows, to-wit: * * *."

Such will then provides that one-half of the property which she might own at the time of her death would go to the brothers and sisters of her husband or their descendants, naming them, "so that in all events the brothers and sisters of my beloved husband, or their descendants, shall receive six-twelfths, or one-half, of my estate upon my death."

Miss Lydia Rose, legal secretary of Mr. Williams, testified in part to a conversation she had with the testator, and it was to the effect that since he and Mrs. Williams had no children they had agreed that each would leave his property to the other and the survivor of the two, upon the death of one, would write a will leaving whatever was left when the survivor died, half to his family and half to her family; that such conversation took place on more than one occasion; that she overheard a conversation concerning this matter between testator and his brother Newt. Newt said, "Lud, you know how Jimmie sometimes gets mad at the family. Suppose she gets mad at the family and eliminates them from her will?" "I spoke up and said that had occurred to me also, Mr. Lud. He was rather annoyed with both of us, and said, 'Jimmie would no more dis-

regard my wishes than I would disregard hers.' " Miss Rose further testified to a conversation she had with Mrs. Williams. "A. Mrs. Williams called me one day. Her nephew, Lud Lincoln, had attended to her local business, but he was unavailable; I can't remember exactly whether it was while he was in the Service in Europe, or whether after his death—I think it was before, but he wasn't available, and she called me one day to make an engagement with me for lunch. We went to the Elite Cafe for lunch. She, rather shortly after we started eating, told me the purpose of the little visit. She wanted to re-write her will.

"Q. Did she tell you why? A. Yes. She was at the moment quite upset and quite angry with one of Mr. Williams' sisters, Mrs. Robinson.

"Q. Where did she live? A. Next door to each other. When I asked her what the trouble was. It seems it arose over a bantam hen. I was very much amused and laughed at her and tried to get her out of her bad humor. * * * I tried to consider the matter very lightly, and told her she was too mad, and felt sure she would forget the whole thing shortly, but she insisted that's the way she wanted it done. She wanted to eliminate Mrs. Betty Robinson from her will.

"Q. That was Lud Williams' sister, is that correct? A. Yes, sir, that is right. I finally told her there were two reasons why I wouldn't help her in the matter, one reason, I don't have a license to practice law and I wasn't qualified to write a will, and the other was, I knew about this agreement between her and her husband, and I knew what each one was to get, and I would have no part in it. * * * I told her I didn't want any part of it, I knew all about the agreement.

"Q. Did you tell her what the agreement was at that time? A. Certainly. I reminded her of that and told her the only thing I had to say, if Lud was aware of such a fact he would turn over in his grave. I knew about the agreement and I wanted no part of it. She said, 'I know what the agreement was, but I will do what I please about this matter.' Then I tried to get back on a lighter subject, she was my personal friend and I didn't want her to be angry with me because I had refused to do what she wanted me to do. However, we parted good friends."

Mrs. Williams thereafter made a will dated May 20, 1948 (in which she revoked her former will), and on August 4, 1948, she executed a codicil to her will of May 20, 1948, and the will and codicil thereto were duly admitted to probate after her death and by this will and codicil she eliminated the Williams family as beneficiaries under her will.

Appellants in their brief contend: "This is a suit to impress a constructive trust in favor of the family of Lud T. Williams upon one-half of the property owned by his wife, Jimmie Robertson Williams, at the time of her death." This statement is true in part, but it is not comprehensive and we think it is inaccurate in that it is based upon the premise that under the record here made the provisions of the will and the parol agreements surrounding its execution created a mandatory trust on one-half the property passing to Mrs. Williams and on hand at her death in favor of appellants. We are not in accord with this view.

Appellees, in their motion for an instructed verdict, asserted that the alleged parol trust declared upon by appellants should be denied because its establishment and enforcement would be inconsistent with and contrary to and destructive of the testamentary disposition of the estate of the testator. We are in accord with this view. Our Supreme Court in McMurray v. Stanley, 1887, 69 Tex. 227, 6 S.W. 412, announced and applied a rule to a factual situation (similar in some respects), which rule, we think, is applicable and controlling here. The late Justice Stayton, 6 S.W. at page 415, said: "The real inquiry on this branch of the case is whether, *looking to the entire will, Mrs. Bagley intended to impose an obligation on her husband to carry her expressed will into effect, or whether, having expressed her wishes, she intended to leave him to act on them or*

*not, at his discretion."* (Emphasis ours.) The Supreme Court of the United States, in Colton v. Colton, 1888, 127 U.S. 300, 8 S.Ct. 1164, at page 1174, 32 L.Ed. 138, made this statement of the rule: *"Plainly, if the trustee refuses altogether to exercise the discretion with which he is invested, the trust must not on that account be defeated, unless by its terms it is made dependent upon the will of the trustee himself."* (Emphasis ours.) We think this view of the Supreme Court of the United States is in accord with the view of our Supreme Court in McMurray v. Stanley, supra. The rule in McMurray v. Stanley as well as the rule in Colton v. Colton has been consistently followed by our Texas courts.

Bearing in mind the provisions of the will and the parol testimony tendered, did the oral agreements that the testator had with his wife prior and subsequent to the execution of the will invalidate the clause in the will that left the distribution of his property wholly to the discretion of his wife? This is the sole and controlling question in this case. Our view is that it did not.

The testator was an eminent lawyer and it cannot be contended that he did not know the effect of the language that he used in his will. On the contrary, this court must assume that the language used was correct and intentional. See Mitchell v. Mitchell, Tex.Sup., 244 S.W.2d 803, point 1, p. 806. See also Avis v. First Nat. Bank of Wichita Falls, 141 Tex. 489, 174 S.W.2d 255, and cases collated under Vol. 38, Texas Digest, Wills, ⟷457 and 470. When his nephew said to him, "Uncle Lud, wouldn't it be better for you to put that in writing?" Mr. Williams replied, "No, we don't want any writing. Jimmie will do what she has agreed to do, provided you can get her to agree to something. She has agreed to do this, and she will do it." Testimony of a conversation between the testator and his brother (his law partner) was tendered, and the brother said, "Lud, you know how Jimmie sometimes gets mad at the family. Suppose she gets mad at the family and eliminates them from her will?" and the testator replied, "Jimmie would no more disregard my wishes than I would disregard hers."

So here we have a contingency and a probability twice pointed out to the testator that his will might be disregarded by the testatrix if she chose to do so, and each time he refused to make any change in his will. So the question here is: Can this court re-write the testator's will so as to create a mandatory trust on one-half of the property at Mrs. Williams' death in favor of testator's family, contra to the intention of the testator made free of doubt by the express provisions of the will and contra to the expressed intention of the testator as detailed by the parol testimony tendered? Our view is that we cannot. The foregoing statement of the rule in McMurray v. Stanley and Colton v. Colton is peculiarly applicable to the language used by the testator in his will, as well as his reaction to the parol testimony surrounding the circumstances under which the will was executed, and which will testator refused to change. The language is: "I give to my beloved and faithful wife, Jimmie Robertson Williams, all my property, real, personal & mixed—to do with as she chooses—trusting her to do the just and proper thing toward all relatives but leaving everything wholly to her discretion—she knows about what I would wish her to do." It is our view that under the terms of the will, as well as the oral testimony tendered, it was the testator's intention that the trust which he provided for and made pursuant to an oral agreement with his wife, the beneficiary in his will, was made dependent wholly upon the will of the testatrix. Otherwise, he would have changed it when it was called to his attention by his nephew and by his brother. Our view here is grounded on the intention of the testator as expressed by the words used by him and the court must look upon the intention of the testator as a polar star to direct it in the construction of the will. The language of the will is unambiguous and free from doubt and says exactly what the testator desires but it leaves the trustee with authority to act wholly at her discretion. The undisputed parol testimony shows that the testator had given

this question much consideration; that he did not change his mind, nor did he change his will. See Bell v. Board of Directors of Pythian Widows and Orphans Home, Tex.Civ.App., 219 S.W.2d 93, point 1, p. 98 (writ ref. n. r. e.). See also Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, point 5, p. 879.

It would serve no useful purpose to cite the Texas cases that have followed and discussed the rule in McMurray v. Stanley and Colton v. Colton, supra. This court had before it a trust question in Byars v. Byars, Tex.Civ.App., 178 S.W.2d 582 (the question being whether the trust was precatory or mandatory) and many of the decisions of our state and other jurisdictions are there cited. The Supreme Court granted a writ in this case, see 143 Tex. 10, 182 S.W.2d 363, 365, opinion by Commissioner Smedley, dissenting opinion by Justice Sharp, which opinion reviews and cites many cases involving the rule here to be applied; and while it is true that the Supreme Court disagreed with this court in the application of the rule there discussed, there is no disagreement between this court and the Supreme Court as to the rule. Justice Smedley made this observation in his opinion: "Other Texas cases, including both those that give to precatory words a mandatory effect and those that construe such words according to their ordinary or natural meaning, are decided by ascertaining the testator's intention from the language used in the will, taking into consideration the immediate context and the context of the entire instrument, and also in many instances the circumstances surrounding the testator, without indulging any presumption, from the use of words of request, that the testator intended to create enforceable duties." Our view here is that the provisions of the will clearly state that the testator did not intend to impose an obligation upon his wife to carry his request for distribution into effect. The parol testimony tendered is to the same effect.

Since we are of the view that the trial court erred in failing to grant appellees' motion for an instructed verdict, it was his duty to grant appellees' motion for judgment non obstante veredicto, and his action in so doing is in all things affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.

On Motion For Rehearing.

McDONALD, Chief Justice (dissenting)

Rehearing denied.

The facts as stated in the majority opinion are correct.

The only cases cited by the majority opinion are: McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138; Mitchell v. Mitchell, Tex., 244 S.W.2d 803, 806; Avis v. First Nat. Bank, 141 Tex. 489, 174 S.W. 2d 255; Byars v. Byars, 143 Tex. 10, 182 S.W.2d 363; Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876; Bell v. Board of Directors of Pythian Widows and Orphans Home, Tex.Civ.App., 219 S.W.2d 93. *All of these cases deal with the construction of that which had been written in a will*, and *not with any question of a trust sought to be established by "parol" testimony, and engrafted upon a will, separate and apart from any of the provisions contained in the will itself.* The Colton case actually supports the position here taken, when speaking of the discretion of a trustee to carry out or not carry out the provisions of a precatory trust set up in a will: "the court will interfere wherever the exercise of the discretion by the trustees is infected with *fraud* * * * they decline to undertake the duty of exercising the discretion * * * where [it] is mischievously and erroneously exercised". [127 U.S. 300, 8 S. Ct. 1174.]

This is a suit to engraft a parol trust on Lud Williams' will, which trust is based on oral agreements between him and his wife, both before and after he executed his will. The agreements are undisputed and the jury so found. These agreements —in view of the highly confidential relationship of man and wife—and the implicit trust and confidence that he had in her— operated to create a mandatory trust in favor of appellants on one-half of the property Mrs. Williams had at death.

Where a grant is made by deed or will on the faith and because of a promise, a

breach of the promise is a constructive fraud not to be tolerated in equity. Clark v. Haney, 62 Tex. 511; Faville v. Robinson, 111 Tex. 48, 227 S.W. 938; Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985; 157 A.L.R. 1007; Sparks v. Mince, Tex.Civ. App., 138 S.W.2d 203; Knight v. Tannehill Bros., Tex.Civ.App., 140 S.W.2d 552.

The undisputed facts and findings of the jury in this case are that Lud Williams left his property to his wife upon her promise made both before and after the execution of the will that she would leave one-half to appellants. The jury further found that the agreement was such she did not have the right to dispose of such property by her will wholly at her discretion, but that her promise obligated her to carry out her husband's desires. *Mrs. Williams intended to keep her promise and executed her first will carrying it out. This will remained in effect for 20 years. It was not until age had impaired her faculties that she wrote a second will repudiating her agreement.*

This case, while a suit to engraft a constructive trust, by parol on a will, to carry out an agreement, is *likewise* a suit seeking relief from a legal or constructive fraud (tho not intentional) which resulted, when the promise made by Mrs. Williams to her husband was repudiated by her. When she committed legal fraud, oral testimony is admissible to show the true conditions, circumstances and agreements, by and on which the grant to her was made. 42 Tex.Jur. 685, par. 74 says:

> "The Supreme Court has announced that where a grant was made on the faith and because of a promise, it is necessarily a fraud for the grantee to repudiate the promise and so oral testimony will be received to show the conditions on which the grant was made. In such case, the admission of oral testimony is warranted by the exception always made in stating the parol evidence rule, viz: that such rule does not stand in the way of oral proof of fraudulent conduct. Also equity considers that the abuse of a confidential relation is a fraud, and parol evidence is admitted to show such abuse."

Once fraud is established the terms of the written instrument no longer control —but equity disregards the language of the instrument, and affords full relief by enforcing the promise upon which the grant was based. The law does not deny relief from fraud merely because to do so would conflict with the terms of a written instrument procured by fraud. Proof of fraud admits evidence to *contradict* or vary the terms of the instrument.

In this case the parol trust sought to be enforced is supported by the very strongest possible principles of equity, of justice, of right, and of good conscience.

For the reasons stated it is my conviction that under the law and the facts, motion for rehearing should be granted, and judgment should be rendered in favor of appellants.