COOPER et al.

v.

CITIZENS NAT. BANK OF WACO et al.

No. 3149.

Court of Civil Appeals of Texas.

Waco.

March 25, 1954.

Rehearing Denied May 20, 1954.

Naman, Howell & Boswell, Waco, for appellants.

Witt, Terrell, Jones & Riley, Waco, for appellees.

Phil E. Teeling, Waco, for appellee bank.

McDONALD, Chief Justice.

This case involves litigation between stockholders of The Cooper Company, Inc. For background see Milam v. Cooper Co., Inc., Tex.Civ.App., 258 S.W.2d 953, Writ Ref. NRE, and Cooper v. Milam, Tex.Civ. App., 256 S.W.2d 196.

Madison A. Cooper et al, as stockholders of The Cooper Company, Inc., brought suit against The Cooper Company, Inc., all other stockholders of The Cooper Company, Inc., and the Citizens National Bank of Waco, seeking to invalidate, nullify and cancel a Resolution of the stockholders passed on 3 December 1952, by which their stock holdings in the corporation were reduced by partial liquidation.

There were 7000 shares of stock in The Cooper Company, Inc., and by law it was necessary that $\frac{2}{3}$ of this number vote for the Resolution for partial liquidation in order for it to prevail. Jesse R. Milam and his family owned 3516 shares. 1600 shares were owned by the Estate of E. C. Barrett. The balance were either owned by Plaintiffs (Appellants), persons in sympathy with them, or by the corporation itself. The 1600 shares owned by the E. C. Barrett Estate were in the hands of the Defendant (Appellee) Bank, which was Independent Executor of the Estate of E. C. Barrett. The 1600 shares of stock had been, by the will of E. C. Barrett, bequeathed as follows:

"I give and bequeath to Madison A. Cooper, Jr., in trust, all of my shares in The Cooper Company, Inc. * * * to be held by my said Trustee during his lifetime for the benefit of my two nieces, Pauline Barrett Brassell and Mary Barrett Denton, share and share alike. *Said stock shall be turned over to said Trustee as promptly as practicable after my death* and all income thereon shall be paid by said Trustee * * * to said beneficiaries. * * * Said Trustee shall receive no compensation for his services as Trustee of said stock, and shall not be required to give bond as *such Trustee,* and *shall have full voting rights as the holder of*

*the legal title to said stock* during the life of said Trustee, or so long as he may continue to serve as Trustee under this provision of my will. It is my will that said Trustee shall not be required to comply with the Texas Trust Act while acting as Trustee herein, and that no beneficiary shall ever have any claim against said Trustee for any act or omission on his part in the performance of said trust."

After the Bank as Independent Executor came into possession of the certificates evidencing the stock of E. C. Barrett in The Cooper Company, Inc., but prior to the meeting of stockholders at which the partial liquidation was voted, the Bank, as Executor, endorsed the stock certificates and delivered the to The Cooper Company, Inc., with request for transfer to Madison A. Cooper, Jr., and the issuance of new certificates to Madison A. Cooper, Jr., Trustee, in lieu of the certificates forwarded. The Trust Officer of the Citizens National Bank testified that after the endorsing and delivering of the certificates as above set forth, *nothing* remained for the Bank to do to consummate the complete transfer of the certificates, and that the Bank never intended to retract or receive back the old certificates. Thereafter the Cooper Company, Inc., by letter signed by J. R. Milam, Jr., President, returned the stock certificates to the Bank, and stated that they were refusing to transfer the stock because the administration was not complete and that they were advised that certain estate taxes and other debts owed by the Estate had not been paid.

At the stockholders' meeting on 3 December 1952, the vote of the 1600 shares of the E. C. Barrett Estate was cast by the Bank in favor of the partial liquidation, which added to the 3516 shares cast in favor of the partial liquidation by Jesse R. Milam and family, totaled 5116 shares or votes in favor of same, and which constituted the necessary ⅔ majority. It should be noted, however, that the Bank, in casting the Barrett stock, filed a letter to The Cooper Company, Inc., at the 3 December 1952 meeting in which it stated that there *exists a con-*

*troversy over the right to vote the E. C. Barrett stock; that Madison A. Cooper, Jr., asserts a paramount right to vote the stock, and that in voting the stock the Bank does so without asserting or representing that it has such right. It votes the stock in favor of the partial liquidation "if we have the right to vote it."* Without the E. C. Barrett 1600 shares being cast in the affirmative, the vote for the partial liquidation would have lacked the necessary ⅔ majority, and for which reason would have failed to carry.

Trial was before the court without a jury, which held that the Citizens National Bank, as independent executor, had the legal right to vote the E. C. Barrett stock—and that Madison A. Cooper, trustee did not have such a right—and rendered judgment for the defendants (appellees).

Plaintiffs (appellants) appeal to this court on one Point of Error, contending that under the undisputed facts in this case, the Citizens National Bank, as independent executor, had no right to vote the E. C. Barrett stock in the stockholders' election to decrease the capital structure of The Cooper Company, Inc.

The sole question for decision by this court, therefore, is: Who had the right to vote the E. C. Barrett stock—the Citizens National Bank as Independent Executor— or Madison A. Cooper, Jr. as Trustee for the beneficiaries thereof?

█ Where corporate stock is among assets of an estate under administration, generally the Administrator or Executor has the right to vote the stock pending administration. Davidson v. American Paper Mfg. Co., 188 La. 69, 175 So. 753, 114 A.L.R. 1044; Hildebrand on Corporations, Sec. 547.

However, in the case at bar we have the specific provisions of the will of E. C. Barrett directing that the Executor turn over The Cooper Company stock to Madison A. Cooper, Jr., as soon as practicable—and further specifically directing that Madison. A. Cooper, Jr. should have full voting rights as to the stock.

■■ Looking to the will of the testator to determine who had the right to vote the stock, we find the provisions thereof to be full, clear, comprehensive and free from ambiguity and all doubt. The denial to the Trustee Cooper of his right to vote the stock was inconsistent with and contrary to the specific and exact terms of the will and was in part destructive of the testamentary disposition of the estate of the testator. The court must look upon the intention of the testator as a polar star to guide it in the construction of wills. This rule was announced by our Supreme Court in Colton v. Colton, 127 U.S. 300, 8 S.Ct. 1164, 1168, 32 L.Ed. 138, and has been followed by our Texas courts. See: McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; Norton v. Smith, Tex.Civ.App., 227 S.W. 542; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Arrington v. McDaniel, Tex.Com.App., 14 S.W.2d 1009. Here we have the Trustee Cooper seeking to exercise the full rights conferred upon him by the will, and the same being denied to him by the Executor of the will and The Cooper Company. We think it is significant that the only power the Trustee had was to hold the legal title to this stock as long as he lived, or so long as he was willing to accept the responsibility imposed upon him by the will, *which was to vote the stock* and receive the income and dividends paid on the stock and divide the proceeds between the beneficiaries named therein. Such provision in the will in nowise contravenes any provision of our statutes relating to estates of decedents, but is wholly consistent therewith, nor is it in conflict with the provisions of the will which appointed the Bank executor, but is wholly consistent therewith. It is true that the will authorized the Executor to sell and dispose of any portion of the testator's estate at public or private sale and in such manner as may seem best to the Executor, *but it specifically excepted from the sale that portion of the estate specifically devised and bequeathed which included the stock in The Cooper Company*. The effect of the will was to preclude the sale of the stock here in question until the other assets of the estate had been liquidated for the purpose of paying the debts of the estate. Neither the Trustee nor the Executor had the power to sell the stock, and the legal title passed to the Trustee burdened only with the provisions of the will. Needless to say that all of the debts of the estate would follow these specific devises, if the other assets of the estate were not sufficient to discharge them. Since The Cooper Company, its President, and its Board of Directors had both actual and constructive notice of the will and its probate, The Cooper Company was without authority to refuse to transfer the Barrett stock to the Trustee when requested to do so by the Executor, and the Bank was also without authority to vote the shares of stock on December 3, 1952; and The Cooper Company was without authority to recognize the Bank as having such right and was likewise without authority to count the votes so cast in favor of the stock reduction and partial liquidation, and the Bank's action in attempting to vote the stock, under this record, as well as the action of The Cooper Company in counting the votes in favor of the stock reduction and partial liquidation are each void, because such action destroys in part the testamentary disposition of the estate of the testator. See: Williams v. Bartlett, Tex.Civ.App., 254 S.W.2d 559, point p. 562, 2nd column, last paragraph.

It is undisputed in the evidence that the Citizens National Bank, on 24 November 1952, and prior to the stockholders' meeting of 3 December 1952, voluntarily assigned the title to the Barrett stock to Madison A. Cooper, Jr., in obedience to the specific mandate contained in E. C. Barrett's will. The Trust Officer of the Bank endorsed the certificates to Madison A. Cooper, Jr. and delivered them to The Cooper Company, Inc., with the request that new certificates be issued to Cooper as Trustee. The Trust Officer testified that it was his intention and understanding thereby to terminate the control of the Bank over the stock and release the same to Cooper. He had done everything he could do to transfer the stock to Cooper. But the President of The Cooper Company refused to transfer the stock and returned it to the Bank "because the administration was not complete,

and there were certain outstanding claims against the Estate."

Everything had been done which could be done by either the Bank or Cooper to transfer the title to the stock to the latter. It was solely through the refusal of The Cooper Company to transfer the stock that an entry to effect the transfer was not made on the corporation's books.

■ It is our view that the failure of the corporation in this instance to record the transfer on its books when it was requested to do so and had full knowledge of the circumstances, will not operate to deprive Madison A. Cooper, Jr. of any right he might have as legal owner of the shares of stock.

The record does not reveal when the 1600 shares of stock were issued to E. C. Barrett. If issued since 1943 the Uniform Stock Transfer Act is applicable, which provides that endorsement and delivery of the certificate is adequate to transfer title to a certificate and to the shares represented thereby, despite any charter, by-law or certificate provision that the shares shall be transferable on the books of the corporation. This Act is a codification of the Texas law as it existed prior to the adoption of the Act, and prior to its adoption our courts uniformly held that entry of the transfer on the books of a corporation, where such formality is required, is not necessary to vest title to the stock in a transferee, if the contract of assignment is otherwise sufficient. Alba Nat. Bank v. Shaw, Tex.Civ.App., 18 S.W.2d 728; Greenspun v. Greenspun, Tex.Civ.App., 194 S.W.2d 134.

■ The requirement that the stock transfer be recorded on the corporate books is to protect the corporation in cases where it has no notice that the transfer has been effected. For example, the corporation may safely rely upon the corporate list of stockholders in paying dividends and would not be liable to pay again to a transferee of whose rights it had no notice. Conversely, if the corporation has notice of the rights of a transferee, it must pay the dividends to the transferee even though the stock not be transferred on the corporate books. H. Seeligson & Co. v. Brown, 61 Tex. 114; Tombler v. Palestine Ice Co., 17 Tex.Civ. App. 596, 43 S.W. 896; Humble Oil & Refining Co. v. Blankenburg, 149 Tex. 498, 235 S.W.2d 891; Kerr v. Tyler Guaranty State Bank, Tex.Civ.App., 283 S.W. 601.

■ By the same token, where the transferor and transferee of stock have done everything in their power to effect the transfer of stock to the transferee, and the corporation has notice of the rights of the transferee, it cannot by an unauthorized arbitrary refusal to transfer the stock on its books, deprive the transferee of *any right as legal owner of the stock*. 13 Am.Jur., p. 430; Hildebrand on Texas Corporations, §§ 353 and 373.

■ Where the stock certificate is presented to the corporate officials, properly endorsed, the officials have no discretionary power to register the transfer but have a mere ministerial duty to perform. 12 Fletcher's Cyclopedia on Law of Private Corporations, § 5518; 10 Tex.Jur., § 185, p. 815.

■ Generally, an Independent Executor may in its discretion transfer title to the legatees whether he has completed his administration of the estate or not and whether he has paid all the claims or not. Here the Executor was under a mandate to do this under the terms of E. C. Barrett's will. The Citizens National Bank did this. The fact that estate taxes and possibly other debts were unpaid, does not alter the situation. The taxing authorities and other creditors, if injured, have their remedy against the Bank and the assets of the estate. The risk, if any, which the Citizens National Bank incurred, and the rights of the creditors could in no manner affect the rights and duties of The Cooper Company, Inc., and its refusal to effect the transfer will not operate in law to deprive Cooper of any right he might have in the stock, including the right to vote it.

■ The evidence before us in this case as to why The Cooper Company, Inc.,

refused to transfer the stock on its books, is that there were unpaid debts and taxes due from the Barrett Estate. These matters were of no concern to The Cooper Company. The duty to transfer the stock was ministerial, and in exercising the ministerial duty to transfer stock on the books of the corporation after the transferor and transferee have done all within their power to effectuate such a transfer—and when the corporation has notice of all the facts,—the corporation should act with dispatch—and without any concern or regard as to how the transferee might or might not vote the stock on matters pending for decision by the stockholders.

The stock, under the record in this case, was effectively transferred and as such Madison Cooper, Jr. had the right to vote it.

Further, when the Independent Executor terminated its control over the Barrett stock and delivered it to The Cooper Company for transfer, it could not thereafter resume control over such stock for any purpose. Parks v. Knox, 61 Tex.Civ. App. 493, 130 S.W. 203; McAdams v. Wilson, Tex.Civ.App., 164 S.W. 59, Er. Ref.; 13 Tex.Jur., p. 776; 14 Tex.Jur. p. 537.

Madison A. Cooper, Jr. had the right to vote the stock—and the Citizens National Bank did not have such right. Denial of this right, which is a legal right as distinguished from an equitable right, does not require that Cooper show either injury in its denial—or that he would have voted the stock in a different manner than did the Bank.

Accordingly, the judgment of the Trial Court is reversed and rendered; all acts of The Cooper Company, Inc. in connection with the reduction of the capital stock and the amendment of its charter and the payment of the partial liquidation dividend are held for naught; appellants and all other stockholders are restored to their previous ownership of stock in said corporation; and the Trial Court is directed to issue such writs in behalf of the parties as may be necessary to enforce the judgment rendered by this court.

## On Motion for Rehearing

Appellees, on motion for rehearing, contend this court's opinion contravenes Articles 7136 and 7137, R.C.S., *which 2 statutes were not cited to the court on original submission, and are cited for the first time on rehearing.*

Article 7136 provides in substance that no executor, administrator, trustee, etc. shall transfer stocks, bonds, etc. to the *legatee* or *heir* thereof until the Comptroller issues notice that State inheritance taxes have been paid.

Article 7137 provides in substance that should any executor, trustee, etc. deliver to any *legatee* or *heir* any stock, or should a *corporation transfer any stock* to a *legatee* or *heir*,—before State inheritance taxes are paid,—then the executor, trustee or corporation so doing will itself be liable for any tax due by the estate.

These statutes have no application to the case at bar.

The Bank's action in endorsing the stock to the Trustee Cooper, or a transfer of same on the books of The Cooper Company could not violate the cited statutes. They provide that stocks shall not be transferred to an *heir* or *legatee*. The statutes' purpose is to protect the State in its collection of inheritance taxes. Cooper is a *Trustee* under the will, with only the power to vote the stock and pay the dividends to *Mrs. Brassell* and *Mrs. Denton,* who are the *legatees.* Endorsement or transfer of the stock to the Trustee Cooper by the Executor or the corporation is not a transfer to a *legatee* or *heir.*

The statutes *prohibit a Trustee* as well as an Executor from transferring stock to a legatee or heir prior to the time the Comptroller certifies that taxes have been paid. The State has the same protection after the transfer to the Trustee as it had prior thereto.

Motion for rehearing is overruled.